## MORRIS & CUMINGS ET. AL. V. STATE OF TEXAS
## EX. REL. N. GUESSETT ET. AL.

(Case No. 1889)

1. FRANCHISE— FORFEITURE— CONTRACT— DISCLAIMER.— PARTIES— PRACTICE.—The franchise of collecting tolls on all freight passing over a certain channel was granted to the city of Corpus Christi; Morris & Cumings contracted with the city to act as her agents in constructing and maintaining the channel, to take bonds of the city in payment, to collect tolls on freight passing over the channel, and with the money thus collected to pay off the bonds. An information in the nature of a *quo warranto* was filed against the city and Morris & Cumings, to oust them from the franchise. The city disclaimed any interest in the franchise, and the suit was dismissed as to her.  *Held:*

(1) That Morris & Cumings' enjoyment of the franchise could not be taken from them by legislation, or even judicially, unless forfeited for some cause which in law would entitle the state to recall the franchise. The agency and contract would be at an end and the privilege would revert to the city when the bonds should be paid.

(2) If the contract between the city and Morris & Cumings was invalid, it did not defeat the franchise, so far as the city was concerned (62 Tex., 728), but the city was responsible for the acts of her agents, and if their misfeasance or non-feasance worked a forfeiture of the franchise, the city's reversion in the tolls was destroyed.

(3) The city could not be deprived of so valuable a right without a hearing in court, and she was a necessary party before any judgment of ouster could be rendered. The disclaimer of interest by the city did not alter the case.

(4) It is extremely doubtful whether a municipal corporation can, by a mere disclaimer, surrender a franchise in which not only the corporation, but a large portion of the state's population residing without the city limits, as well as of the commercial world, are interested.

(5) The disclaimer was not equivalent to a judgment against the city, and the dismissal following upon it placed her in the same position as if she had never been sued.

(6) The case could not proceed to judgment without the presence of the city, even with the consent of the other defendants. Any such judgment would be of no avail to forfeit the franchise, and the error in rendering it would be fundamental in its character, and would be noticed without an assignment.

2. JUDGE—DISQUALIFIED.—See statement of case and opinion for facts held not sufficient to disqualify a presiding judge.

APPEAL from Nueces.  Tried below before the Hon. J. C. Russell. This is the second appeal of this cause.  For the action of this court on the former appeal, 62 Tex., 728.

The suit was commenced by an information in the nature of *quo warranto* filed by the county attorney at the relation of N. Gussett and others in the District Court of Nueces county, on the 30th of June, 1881, against appellants, requiring them to show by what authority they assumed to charge and collect tolls on freight passing

through the ship channel connecting the waters of Corpus Christi and Aransas bays. The petition also prayed that defendants (who are appellants in this court) be restrained and enjoined from collecting toll on freight passing through the channel, and that their claim to the franchise and right be declared null and void.

The city of Corpus Christi was one of the original defendants or respondents in the court below. The city filed an answer disclaiming all right to collect the tolls, and asked that the suit be dismissed as to the city, which was done.

The other defendants, Morris & Cumings and the Central Wharf and Warehouse Company of Corpus Christi, the latter being a corporation chartered under the laws of the state of Texas, filed a general denial and a special answer, alleging a legislative grant to the city of Corpus Christi to construct the channel and to collect tolls for the use thereof.

A declaration in relation to (the) Corpus Christi Ship Channel, passed by the Constitutional Convention of the state of Texas, January 26, 1869, recognizing the grant and validating the bonds issued by the city thereunder, these defendants also set up in their answer, and proved a ratification and confirmation of the right of Morris & Cumings to collect the tolls on all freight passing through the channel by virtue of an act of the legislature passed May 22, 1873, entitled, "An Act to reincorporate the city of Corpus Christi," and also another act passed on the 23d of May, 1873, entitled, "An Act in relation to the Corpus Christi Ship Channel," and the ordinances passed by the mayor and board of aldermen of the city mentioned in the acts of the legislature, and another ordinance of the city passed May 20, 1874, by which the channel was declared completed, and was accepted by the city as having been constructed in compliance with the law and the contract made with Morris & Cumings.

These defendants also alleged that they were the legal and equitable owners and holders of all the bonds which had been issued by the city to D. S. Howard & Co., to the amount of five hundred thousand dollars, for the opening of the ship channel, except twenty-six of the bonds of $1000 each, which had been discharged, cancelled and surrendered to the city.

The cause was tried by the judge without the intervention of a jury. The defendants suggested the disqualification of the Hon. J. C. Russell, the presiding judge, to sit on the trial of this cause, and moved that he be recused; the suggestion and motion was overruled, to which ruling defendants excepted.

The defendants then moved for a change of venue, for reasons

apparent in the record; this motion was overruled and defendants excepted.

The judge then proceeded to the trial of the cause, and rendered judgment for the state and relators, ousting respondents of their franchises and declaring them forfeited.

The judge filed his conclusions of fact and law separately, as follows, to-wit:

In accordance with the request of counsel for respondents, the court presents and files the following conclusions of fact and law separately, and upon which is predicated the judgment of ouster herein rendered:

CONCLUSIONS OF FACT.

1. I find that respondents have a valid contract made under the laws of the state of Texas, and the several ordinances of the city of Corpus Christi, whereby they were authorized to construct and maintain a ship channel between Corpus Christi and Aransas bays, to be of the depth of eight feet and the width of not less than one hundred feet at ordinary tides; and that they were required to maintain the same at said dimensions, and not permit the same to shoal or fill up so as to impede free navigation of said channel; and that in consideration of the same, respondents have the right to collect tolls on all vessels passing through said channel until the bonds issued by the city of Corpus Christi, in the sum of $500,000, and the interest thereon, are satisfied out of said tolls.

2. I find that respondents are the lawful owners and holders of all said outstanding channel bonds, and have all the rights and franchises of D. S. Howard & Co., and of the city of Corpus Christi, in relation to said ship channel.

3. I find that on the 12th of May, 1874, said channel was accepted by the city of Corpus Christi as of the required width and depth, and constructed according to contract; and by the declaration and ordinance accepting same, Morris & Cumings, or their assigns, were required to maintain said channel at all times of the said width and depth of the contract, and not permit the same to shoal or fill up so as to impede or delay free navigation of said channel.

4. I find that the agent of respondents, prior to the 8th of May, 1877, was notified by one of the pilots bringing vessels through said channel, that said channel was deficient in width and depth at ordinary tides, and that vessels were being impeded and delayed thereby, and that agent answered: "Morris & Cumings will never throw another shovelfull from that channel."

5. I find that on or about May 8, 1877, respondents had further notice of the continued condition of deficiency in width and depth of said channel at ordinary tides from the city council of Corpus Christi, one of the contracting parties, who, by the ordinance, declared the existence of said deficiency, and the suspension of collection of tolls upon said channel; that said notice was, by official publication of said ordinance and proceedings of the council in the official journal, and also actual notice upon the agent of respondents afterward, who refused to regard said notice.

6. I find from at least the 8th of May, 1877, until the month of April, 1881, the respondents wilfully failed and neglected to comply with their contract and restore and maintain the said channel to the contract depth and width at ordinary tides, but permitted shoals to exist and increase for fully four years, and the free navigation of said channel during said period was impeded and delayed for the class of vessels and steamers arriving and departing from the port of Corpus Christi and passing through said channel; and that respondents continued to exact and collect tolls during all of said period, and did receive as tolls from relators and others from the 8th of May, 1877, to the 31st of March, 1881, the full sum of money as tolls of forty-one thousand five hundred and seventy-four dollars.

7. I find that respondents, about the 26th of April, 1881, commenced work upon said channel, and they prosecuted said work of dredging until about September 1, 1881, and since the latter date steamers drawing eight and eight and a half feet have passed through said channel without hindrance or delay.

### CONCLUSIONS OF LAW.

1. I find that since the 12th of May, 1874, a valid and binding contract has existed between the city of Corpus Christi and Morris & Cumings (now represented by respondents), whereby, for the consideration of five hundred thousand dollars in bonds of said city and interest from 1858, known as the Ship Channel Bonds (and as pleaded by respondents), and to be paid out of tolls on the said Corpus Christi ship channel, said Morris & Cumings, or their assigns, agreed to complete said ship channel to the depth of eight feet and a width of one hundred feet at ordinary tides, throughout its whole extension, and at such dimensions at all times during the continuance of their franchise maintain said channel and not permit it to shoal or fill up so as to delay or impede the free navigation of said channel.

2. That said contract bestowed the franchise of collecting tolls upon

respondents, and a compliance with said conditions by respondents was indispensable to the legality and validity of exercising said franchise; that the conditions of said contract requiring respondents to keep said channel at all times of the depth of eight feet and a width of one hundred feet at ordinary tides throughout the length of said channel, and not permit the same to shoal and fill up so as to impede or delay the free navigation of said channel, was an important consideration of said contract, and material.

3. The respondents are guilty of willful misuser of the franchise of collecting tolls amounting to the sum of forty-one thousand five hundred and seventy-four dollars, while willfully failing and neglecting, after notice, to keep said channel of the contract width and depth at ordinary tides; and willfully permitting said channel to shoal and fill up so as to delay and impede the free navigation of the same for four years; and the state and relators are entitled to their judgment of ouster and forfeiture of the franchise of respondents, who are unlawfully intruded into the same.

Appellants claimed that the presiding [judge, J. C. Russell, was disqualified, on the ground that he was formerly a partner in the firm of Fly & Russell, and that the firm name appeared to be an instrument in writing which was presented to the city council of Corpus Christi by Fly & Russell, in their capacity as attorneys for Morris & Cumings, in a controversy over the franchise of the ship channel.

*McCampbell & Givens*, for appellants, as to the presiding judge being disqualified, cited: Slaven *v.* Wheeler, 58 Tex., 23; Newcome *v.* Light, 58 Tex., 141; Hodde *v.* Susan, 58 Tex., 389.

As to the effect of a failure to keep the channel clear, they cited: Bennett's Branch Improvement Co., Appeal 66 Penn. St., 242; Gould on Water, sec. 146; Susquehanna Boom Co. *v.* Dubois, 58 Penn. St., 182; Commonwealth *v.* Alleghaney Bridge Co., 20 Penn. St., 185; Carmen *v.* Clarion River Navigation Co., 81 Penn. St., 412; Kellogg *v.* Union Co., 12 Conn., 18; Commonwealth *v.* Breed, 4 Pick., 460; High on Ext. Leg. Rem., secs. 566, 567; People *v.* Bank of Hudson, 6 Conn., 217; State *v.* Real Estate Bank, 5 Ark., 595; People *v.* Bank of Washington, 6 Cowen, 211; People *v.* Bank of Niagara, 6 Cowen, 196.

*G. R. Scott* and *Welch & Givens*, for appellees, cited: People *v.* B. & R. Turnpike Co., 23 Wend., 235, *et seq;* Canal Co. *v.* Railroad Co., 4 Gill & Johns, 107-121; People *v.* H. & C. T. R. Co., 23 Wend., 256; 1 Blackstone's Comm., 485; People *v.* K. & M. Turnpike Co., 23 Wend., 193; Thompson *v.* People, 23 Wend., 537; Susquehanna Boom Co. *v.*

Dubois, 58 Penn., 185; People v. B. & R. Turnpike Co., 23 Wend., 243; Thompson v. People, 23 Wend., 537; 3 Harg. St. Tr., 549, 550, 599; Comyn's Digest, Quo Warranto (A) and Franchises.

WILLIE, CHIEF JUSTICE.—This cause was originally commenced by filing an information in the nature of a quo warranto, in the name of the state of Texas, against the city of Corpus Christi, Morris & Cumings, and others, for the purpose of ousting the defendants from the franchise of collecting tolls on freight passing over the channel connecting the bays of Aransas and Corpus Christi.   The city having disclaimed any right, title or interest in the franchise, the suit was dismissed as to her, but proceeded against the other defendants; and as to them, a judgment of ouster was rendered.   This judgment was rendered upon sustaining a demurrer to the answers of the defendant, and they having appealed, it was reversed, and the cause remanded for a new trial.   62 Tex., 728.

The principal questions raised upon the former appeal (though some subordinate points were discussed) were as to the validity of the contract made between Morris & Cumings and the city of Corpus Christi, whereby the former agreed to act as agents for the city in constructing and maintaining the channel, and to receive pay therefor in the bonds of the city, and to collect tolls upon freight passing over the channel and with the money thus collected pay off the bonds; and also as to whether or not a repeal of the charter of the city put an end to this contract.

This court held that the contract was valid, and could not be impaired by any subsequent legislation without violating the constitution of this state and of the United States.

This contract gave to Morris & Cumings the right to collect tolls so long only as any of the above bonds remained unpaid.   Their enjoy ment of the franchise, therefore, was theoretically of a temporary character, and held in subordination to the rights of the city; but could not be taken from them by legislation, or even judicially, unless forfeited for some cause which in law would entitle the state to recall the franchise.   When the bonds should be paid, the agency and the contract would be at an end, and the privileges enjoyed by Morris & Cumings as agents would revert to the city, to be used by her in accordance with the laws by which they were granted and regulated.

Such, too, would have been the effect of an avoidance of the contract for the reasons urged against it upon demurrer on the former trial. It would have reverted to the city to be held as if no contract had ever been made.   The demurrer sought to forfeit the franchise because

Morris & Cumings had no valid contract with the city. As the avoidance of the contract would not have defeated the franchise so far as the city was concerned, we determined the cause without the presence of the city in court, her rights not being imperilled by any judgment that could be rendered in that state of the cause.

But the case was presented in an entirely different aspect upon the second trial. The state then sought a forfeiture upon entirely different grounds; viz: The failure to open and maintain the channel of the depth and width required by the laws authorizing its construction. If this failure worked a forfeiture of the franchise, the *quo warranto* information would wrest it as well from the city as from her agents, and it would return to the state by which it was originally granted. The city was responsible for the conduct of her agents in that respect, and a successful attack upon the grant for the misfeasance or non-feasance of these agents would be a death-blow to the city's rights in the franchise itself. Her reversion in the tolls would be destroyed, as well as the temporary right to collect them which she had transferred to Morris & Cumings. No judgment of ouster that could be rendered in this proceeding would deprive Morris & Cumings of the right to collect tolls and leave that privilege in the possession of the city. If Morris & Cumings abused the franchise, they did so as agents of the city; their acts were her's, and both must alike suffer the consequences.

The city of Corpus Christi can not be deprived of so valuable a right without a hearing in court, and she was a necessary party to this proceeding before any judgment of ouster could be rendered.

It is no answer to this to say that the city had, prior to the first trial, disclaimed any interest in the franchise sought to be forfeited. Her disclaimer was doubtless the result of a mere conclusion of law, drawn from the fact that she had contracted with Morris & Cumings that they should enjoy the franchise to pay for constructing the channel, or from the fact that her charter had been repealed, and with it may have fallen all her title to the franchise. But the pleadings and evidence brought into the case subsequently to her disclaimer, showed that she did have an interest in the franchise, and to this effect was the decision of this court heretofore rendered in the suit. The city's assertion that she had no right in the franchise sought to be forfeited, was, by that decision, determined to be erroneous; and in order to completely oust the owners and claimants of the franchise and revest it in the state, it was necessary to make the city a party. It may be added that it is extremely doubtful whether a municipal corporation can, by a mere disclaimer, surrender a franchise in which, not only

the corporation, but a large portion of the state's population residing without the city's limits, as well as of the commercial world, are interested.

Moreover, when the city disclaimed, no interlocutory judgment was rendered against her, nor was she included in the final judgment of ouster entered in the cause; but the state merely dismissed as to her, which left the suit in the same condition as if the city had never been made a party to it at all. This action was equivalent to an admission on the part of the state that the city had been brought into court under the false impression that she was interested in the franchise; but she having declared that she had no such interests, her assertions in that respect would be received as true, and the suit, erroneously commenced as to the city, would be dismissed. When, therefore, it became an ascertained fact that the city held an important interest in the franchise, it was essential that she should be again brought into court before the grant could be resumed by the state. The disclaimer was not equivalent to a judgment against the city, and the dismissal following upon it placed her in the same position as if she had never been sued.

We think the case could not proceed to judgment without the presence of the city, even with the consent of the other defendants. Any such judgment would be of no avail to forfeit the franchise, and the error in rendering the one now under consideration is fundamental in its character, and must be noticed without an assignment.

As the case will be remanded for a new trial, we may as well dispose of the preliminary questions raised below, and which may again arise upon another trial. We do not think there was sufficient evidence to disqualify the presiding judge. The release signed by Fly & Russell as attorneys for Moore and Morris & Cumings, had on its face no apparent connection with this suit. Fly & Russell may have been authorized by these parties to execute the release for them, and yet had no other employment whatever in reference to the ship channel. No outside evidence connects the release with the present controversy. Judge Russell stated that he knew nothing about any employment of his firm by the above parties. He could not say who signed the paper, but supposed his partner, Fly, did; besides, he renders it very doubtful as to whether Fly & Russell had ever been employed even to make the release, for he says Morris & Cumings failed to recognize their employment, but repudiated Fly's draft for a fee on the ground that they had never been employed. These facts, taken together, neither establish an employment, nor the performance of services in reference to any matter which had the least connection with the matters to be

determined in the case. The other grounds are not causes of dis-
qualification; they go rather to show prejudice in the judge, but not
that he, or anyone connected with him, had any interest whatever in
the subject of controversy. We have considered the grounds of the
motion as if they were proven. They are brought before us by bill
of exceptions, and the release, as well as the statement of the judge,
seem to have been admitted in evidence without objection. In the
case of Slaven v. Wheeler, 58 Tex., 23, referred to by appellees, the
judge's statement never appears to have been used in evidence, but
was merely placed by him in the record, and formed no part of any bill
of exceptions.

The motion for a change of venue was also properly overruled. It
was not supported by affidavit, as is positively required by our stat-
utes. R. S., art. 1271.

In the errors already pointed out, the judgment must be reversed
and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 3, 1885.]