67   303
80   286

## No. 2086.

## MORRIS & CUMMINGS ET AL. *v.* SCHOONER LEONA ET AL.

1. CASES FOLLOWED.—The decisions in Morris & Cummings v. Schooner Leona, 62 Texas, 75; Same v. State, 62 Texas, 722, and Morris & Cummings v. State, 65 Texas, 53, reaffirmed, to the effect that the agreement between Morris & Cummings and the city of Corpus Christi, that they should have the right to collect tolls on the channel connecting Aransas bay and Corpus Christi, on stipulative considerations and conditions, until the bonds issued by the city should be paid off by the amount received from tolls, was a contract that the State could not impair by subsequent legislation.

2. TOLLS—CONTRACT CONSTRUED.—But that contract was binding in all its provisions, and that portion which provided for a suspension of the collection of tolls as long as the channel was not of proper dimensions, was the only means reserved by which an observance of that portion of the contract which was intended to preserve a proper channel for the transit of commerce, could be enforced.

3. SAME—QUO WARRANTO.—A proceeding by quo warranto by the State is not the remedy to enforce the requirement to keep the channel of proper dimensions; that proceeding is used to forfeit, not to suspend a franchise. It is used to reclaim a privilege granted by the State, not to punish for a breach of private contract. Even if the right to forfeit the franchise could be enforced by the State, it would not deprive the city in advance of its exercise of the right to enforce the contract requiring the channel to be kept in proper condition.

4. SAME.—On the failure of Morris & Cummings to keep the channel of the dimensions required by their contract, it was the right of the city of Corpus Christi, after giving them notice and allowing them a reasonable time to comply with their contract, to act through the city council and suspend the collection of tolls until the channel was restored.

5. CONTRACT CONSTRUED.—The stipulation in regard to the channel was in effect an agreement on the part of Morris & Cummings that they would not charge tolls while the channel was in a shoaled condition; this stipulation inured to the benefit of every vessel that passed the channel, and it was violative of their contract to attempt to collect them.

APPEAL from Nueces.    Tried below before the Hon. J. C. Russell.

. The conclusions of law and of fact by the judge trying the case were as follows:

"I find that a valid contract existed by the laws of Texas, and the charter and ordinances of the city of Corpus Christi, between D. S. Howard & Co. and their assigns and the city of Corpus Christi, to construct and maintain a ship channel between Corpus Christi and Aransas bays, to be of the depth of eight feet and a width of one hundred feet through its whole extension at ordinary tides.

"Second conclusion of fact:    I find that plaintiffs are the lawful assigns of D. S. Howard & Co., holders of the bonds of said channel, and subrogated to all the rights of D. S. Howard & Co. and the city of Corpus Christi in the construction and maintenance of said ship channel.

"Third conclusion of fact:    I find that in 1874 said channel was completed and accepted by the city of Corpus Christi by an ordinance of the said city dated May 12, 1874, as according to contract, declaring also as provided by said contract that, 'if at any time said channel is suffered to shoal or fill up, or to be in any way obstructed so as to impede, delay or prevent the free navigation of the same, the collection of tolls shall be at once suspended, and so continue suspended until every such impediment or obstruction is removed, and the legal depth and width

of the canal as established by existing ordinances be restored and maintained.'

"Fourth conclusion of fact: I find that, in the early part of 1877, said channel had shoaled to a depth less than required by contract, and was not of the width and depth required by said contract at ordinary tides; that plaintiffs' agent, A. M. Davis, of the firm of Doddridge & Davis, was notified by one of the pilots engaged in bringing vessels through said channel, that the said ship channel upon which they were collecting tolls was deficient in width and depth at ordinary tides as required by their contract, and that vessels were being impeded and delayed thereby.

"Fifth conclusion of fact: I find that subsequent to the above notice, and in May, 1877, plaintiffs had notice of said continued conditions of deficiency in width and depth of said channel at ordinary tides, by the passage of an ordinance of the city of Corpus Christi, predicated upon a report of a committee of said council, who made careful examination of said channel, and which said ordinance declared the collection of tolls by plaintiffs suspended until made to conform to the depth and width as prescribed by the contract of plaintiffs and said city, and which said ordinance was published, with the proceedings of said city council, in the official newspaper of said city at Corpus Christi, and the agents of plaintiffs were notified of the deficiency by the city council afterwards.

"Sixth conclusion of fact: I find that, to the notice of the pilot, the agent of plaintiffs answered that 'Morris & Cummings would never throw another shovelful from the channel,' and said agent refused to recognize the notice of the council of the city of Corpus Christi, deeming it not official, and continued to enforce the collection of tolls.

"Seventh conclusion of fact: I find that after said notification, plaintiffs willfully and maliciously failed and neglected to restore and maintain said channel to the contract width and depth at ordinary tides, but permitted the same to shoal during the period from said notification to April 26, 1881, about four years, and the free navigation of said channel for the class of steamers and sail vessels coming and going from the port of Corpus Christi was impeded and delayed, but that plaintiffs contined to collect and exact the tolls thereon.

"Eighth conclusion of fact: I find that plaintiffs, about April 26, 1881, commenced work upon said channel, and proceeded with,

and that said work was prosecuted until about September 1, 1881, in the dredging of said channel, and that since that date vessels drawing eight feet and eight and a half feet of water have passed through said channel without hindrance or delay.

"Ninth conclusion of fact: I find that the schooner Leona was owned by N. Gussett, and that she passed through said channel as alleged in plaintiffs' petition, and her owner refused to pay the tolls, because of impediments and delays in said ship channel, then deficient in depth and width, as required by contract.

"First conclusion of law: I find that from and after the passage by the legislature of the acts approved May 22, 1873, and May 23, 1873, entitled, respectively, 'An Act to re-incorporate the city of Corpus Christi,' and 'An Act in relation to the Corpus Christi Ship Channel,' a valid contract existed between the city of Corpus Christi and Morris & Cummings, whereby, for the consideration of the bonds issued by the city of Corpus Christi originally to D. S. Howard & Co., and transferred to Morris & Cummings, and to be paid out of the tolls and revenues of said channel, said Morris & Cummings agreed to complete the channel to the depth of eight feet and the width of one hundred feet, at ordinary tides, through its whole extension, and to keep it of those dimensions, and not permit the same to shoal or fill up so as to delay or impede the free navigation of the same, and said work was to be completed by December 15, and be accepted by the city of Corpus Christi.

"Second conclusion of law: I find that by the terms of said contract it was incumbent upon plaintiffs at all times since the time of the acceptance of said channel, May 12, 1874, to maintain said channel throughout its whole extension at a depth of eight feet and a width of one hundred feet at ordinary tides, and that, if plaintiffs permitted the same to shoal or fill up so as to be of less dimensions at ordinary tides, so as to delay the free navigation of said channel, the right to collect tolls was at once suspended, and remained suspended until they restored the same to the legal depth and width of their contract.

"Third conclusion of law: The collection of tolls upon vessels passing through said channel was suspended from at least the eighth of May, 1877, until the first of September, 1881, and vessels passing through said channel, during said period, were not in law liable for said tolls, nor were their owners liable for same.

"Fourth conclusion of law: I find in favor of defendants, and that plaintiffs take nothing by their demand and suit herein.

"J. C. Russell,
"*Judge Twenty-eighth Judicial District.*"

*McCampbell & Givens*, for appellants, on their proposition that before the right of appellants to collection of tolls on vessels which passed through the said channel could be suspended, this question must have been tried by a court of competent jurisdiction, having this question directly in issue, and by "due process of law," and further, that the question of the suspension of the collection of tolls can not be determined in this suit, cited State Constitution, Bill of Rights, section 17; Gould on Waters, sections 144, 146; Tamar Navigation Company v. Wagstaffe, B. & S., 288; Quincy Canal v. Newcomb, 7 Met., 276; Enfield Toll Bridge Company v. Connecticut River Company, 7 Connecticut, 46; Kellogg v. Union Company, 12 Connecticut, 20; Hartford Bridge Company v. East Hartford, 16 Connecticut, 173; Pearce v. Olney, 20 Connecticut, 557.

*Welch & Givens*, for appellee, cited Morris & Cummings v. Gussett, 62 Texas, 742; Thompson v. People, 23 Newell, 537; Perrine v. The Chesapeake and Delaware Canal Company, 9 Howard, 172.

Willie, Chief Justice. This suit is by the appellants against the schooner Leona and her owner, N. Gussett, for the sum of four hundred and thirty-one dollars and thirty-four cents, alleged to be due the appellants as double tolls on freights transported during the month of May, 1881, in the Leona, over an artificial channel connecting the bays of Aransas and Corpus Christi.

The main defense of appellees was the failure of Morris & Cummings to keep the channel of the depth of eight feet and the width of one hundred feet throughout its entire length, as required by the laws of the State and a contract entered into by them with the city of Corpus Christi. The appellee alleged that it was of much less depth and width than was required at the time the freight for which the tolls were charged passed over the channel, and had been in this condition for a long time previous thereto. They further claim that the city had, as far back as 1877, caused the width and depth of the channel to be ascer-

tained by proper soundings, and, finding it narrower and shallower than the contract required, had notified Morris & Cummings of the fact; that they had refused to restore its proper dimensions, and that, thereupon, the city council had suspended their right to collect tolls, and that this suspension was in force at the time the Leona transported the said freight over the channel.

The appellants denied these allegations as to the dimensions of the channel at that time, and further insisted that if the facts alleged were true this would not defeat their right to collect the tolls, as this right was a franchise which could be forfeited, if at all, only by a direct proceeding on the part of the State, and that it was not subject to the collateral attack made upon it in this case. The court below found the facts to be in accordance with the defenses set up by the appellees, and that the suit could not be maintained, because the channel was not up to the contract requirements at the time the Leona passed over it with the freight upon which the tolls were charged, and gave judgment for the appellee. From that judgment this appeal is prosecuted.

There was abundant proof produced upon the trial to show that during the entire month of May, 1881, the canal was not eight feet deep or one hundred feet wide for its whole length, but that at that time, and for more than three years previous thereto it had been allowed to shoal and narrow to much less dimensions. It was also shown that, as far back as 1877, the channel had become so obstructed as to interfere with the transit of vessels drawing less than eight feet of water; that the city council of Corpus Christi had ascertained this fact by an actual survey; had given notice to Morris & Cummings to restore it to proper dimensions, but that they had failed to do so until September, 1881. The city council had passed an ordinance suspending the collection of tolls till the channel should be restored, and that this order was in force during the month of May, 1881. Some of this evidence was objected to by the appellants, but as these facts were important upon the question of the right of appellants to demand toll, as will be seen hereafter, there was no error in the court's taking it into consideration.

Questions as to the relation of Morris & Cummings to the city of Corpus Christi in reference to the right to take these tolls, have been before this court on three different occasions. (See Morris & Cummings v. Schooner Leona, 62 Texas, 75; Same v. State, Id, 728; Same v. State, 65 Texas, 53.)

The result of these decisions is that the right to construct and maintain the channel, and demand toll for the passage of vessels through it, which had been granted to the city of Corpus Christi, was by her transferred to Morris & Cummings upon certain considerations and conditions, and until the bonds issued by the city in payment for the channel should be paid off by the amount received for such tolls. This agreement as to the transfer was held to be valid in all respects, and a contract which the State could not impair by subsequent legislation.

Every part of the contract was binding and might be enforced. Hence that portion which provides for a suspension of tolls so long as the channel was not of proper dimensions can not be eliminated from the contract, but must be rendered effective according to its terms. It was inserted for the purpose of securing a compliance with the other provisions of the contract, and effecting its object, which was to excavate and keep constantly in good condition a channel which would open the port of Corpus Christi to the commerce of the world. To dig such a channel and then allow it to fill up, would be of little service to commerce or the interests of the city; hence the requirement that it be kept at the proper depth was as important as that it should be of sufficient dimensions when originally constructed. The city council reserved no other means of enforcing this important provision of the contract, except the right to suspend the tolls if it was not fulfil'ed. If she can not enforce these terms, then the reservation is void, and the contract stands as if no such right was reserved and the city is powerless to compel the contractors to keep the channel in the condition they have agreed that it should at all times remain.

But it is said the State must proceed by an information in the nature of a quo warranto to forfeit the franchise, and this is the only remedy for any default in maintaining the channel at proper depth and breadth. The quo warranto proceeding is used to forfeit, not to suspend a franchise. It is used to reclaim a privilege granted by the State, not to punish for a breach of private contracts. The present contract contemplated no such penalty as the permanent deprivation of the right to collect tolls for a failure on the part of Morris & Cummings to keep the channel of prescribed dimensions. The penalty was a suspension of tolls till the proper size of the channel should be restored This stipulated penalty was imposed to compel the maintenance

of a channel which would admit vessels of sufficient draft to serve the purposes of the commerce of Corpus Christi.

If it should become shoaled it was to the interest of the city that its depth should be restored, and the fact that no tolls could be received till this was done, was a spur and an encouragement to the contractors to restore it as soon as possible. Whatever may be the right of the State to proceed for a forfeiture of franchise under the laws by which it was granted to the city, it is very clear that the existence of such a power in the State, would not interfere with the right of the city to enforce her contract with the contractors of the channel. These rights were entirely consistent with each other. The one, as we have held, must be directed against all parties having an interest in the franchise, viz., the city and the contractors. (Morris & Cummings v. The State, 65 Texas, 53.) The other was to be enforced between the city and the contractors, without any reference to the State whatever.

We have then a valid contract, with a binding stipulation contained in it, that if the agreements on the part of Morris & Cummings as to deepening and maintaining the channel are not complied with, their right to tolls should be suspended. Their agreement as to maintaining the channel was not fulfilled. It was then the right of the city to suspend the tolls until the channel was restored. This right she exercised upon proof satisfactory to herself, and which was shown in this case to be true; and she exercised it in the only manner she could, viz., thorough action on the part of her council. She gave notice to Morris & Cummings, and allowed them an opportunity of performing their duty before enforcing the stipulated penalty. This they refused to do, and we can see no reason why, in accordance with their contract, the right to suspend the collection of tolls should not take place and be put into practical effect when they are sought to be collected during the suspension.

This would be the effect of a breach of a like contract where no franchise was involved. If a suspension of the right to receive money from third persons for a failure to perform an agreement was stipulated for, upon such failure the receipt of the money could no longer be enforced. There is nothing in the nature of a franchise which makes a contract between parties in reference to it less obligatory than when made with reference to other matters. As to its forfeiture for anything which the State alone can take advantage of, this is between the State and

its owners; but as to any lawful contracts made between the grantee and other parties, no interference of the State is necessary to enforce them, and no failure on her part to interfere can prevent the grantee from insisting upon their performance.

The stipulation under consideration was in effect an agreement on the part of Morris & Cummings that they would not charge tolls whilst the channel was in a shoaled condition. This stipulation inured to the benefit of each vessel that used the channel, and the suspension was inoperative if vessels could be compelled to pay toll after it was declared, in the same manner as before. When the contingency happened for which the tolls might be suspended, and the suspension took place, the agreement was that any vessel might pass over the channel without paying toll, and it was a violation of their agreement for the appellant to collect them.

If the agreement had been that any vessel which should be grounded on her way through the canal should not pay toll, such a contract could certainly be enforced by pleading this fact in a defense of a suit to recover toll from her.

This would be a suspension of the franchise in the particular case. If it can be suspended at all it can be suspended to any extent the parties can agree upon. If a contract to the effect that the franchise of Morris & Cummings should cease and revert to the city in case of their non-performance of any part of their contract had been so authorized by the State, there could be no objection to its enforcement, through it deprived them of the franchise altogether and reinvested it in the city. No proceeding on the part of the State would have been necessary, as the franchise was not to be resumed by the State, but by her grantee. In that event their right to tolls would be divested by virtue of their contract; and that it was suspended by the action of the council does not admit of a doubt. We think that the conclusions of the court that this suit could not be be maintained were correct, and the judgment is affirmed.

*Affirmed.*

Opinion delivered February 1, 1887.