## THE STATE OF TEXAS V. MORRIS & CUMINGS.

### No. 2495.

1. **Forfeiture—Legislative Act.**—In view of the Act of May 22, 1873, which recognized as valid and binding certain ordinances of the city of Corpus Christi relating to the opening of the ship channel between Corpus Christi and Aransas Bay, said ordinances of the city council should be given as much effect as would their contents when incorporated in an act of the Legislature in determining whether it was intended that a temporary failure to keep said channel in proper condition should not be cause of forfeiture.

2. **Same.**—When the Act of 1873 was passed the Legislature knew that the city only expected to open and maintain the ship channel through its contract with Morris & Cumings, whose contract was validated by that act; that the city had issued its bonds and provided as a means of compelling Morris & Cumings to keep the channel open that their right to demand tolls should be suspended so long as the channel was not kept in a condition for navigation. In view of this legislation it was not the legislative purpose that as against the city a cause for forfeiture of the charter should exist for a cause which as against Morris & Cumings would only result in the suspension of the right to collect tolls.

3. **Forfeiture of Franchise.**—Though one holding a franchise subjects the same to forfeiture by neglecting to perform a duty to the public the performance of which formed the consideration for the grant, yet if from the law which confers or recognizes the charter it appears that the owners thereof might resume the exercise of the franchise after a temporary failure to perform the duties to the public resulting from it, no cause of forfeiture exists from such temporary neglect. The sovereign power which confers a franchise may recognize or provide a milder form of enforcing public duties resulting from its grant than its forfeiture, and when such a purpose can be ascertained from the legislation which created the franchise it will be given effect to by the courts.

4. **Same.**—A legislative act which declares that the exercise of a right to collect tolls by the owners of a franchisesh all be suspended until some act or acts be done, carries with it the implication that the resumption of the exercise of the franchise was intended to be lawful after the act which caused the suspension of the right was performed. Such an act evinces a legislative intent to waive the right of forfeiture on account of a temporary failure to perform the particular act or duty, and this whether such act or duty was one in which the public was interested or not.

5. **Cases Reviewed.**—The People v. The Bank, 6 Connnecticut, 215, cited and reviewed.

6. **Cases Cited.**—The People v. Bank of Niagara, 6 Cowen, 209; State v. Bank, 10 Ohio, 588; and Commonwealth v. Bruce, 4 Pickering, 464, cited.

7. **Cases Distinguished.**—This case distinguished from those which hold that an act of legislation which provides for the recovery of penalty by those who may be injured by the misuser or nonuser of a franchise can not operate as a waiver of the right of the State to declare a forfeiture of the charter for such misuser or nonuser.

8. **Forfeiture of Franchise.**—The nonuser of a franchise can not be deemed a cause for its forfeiture unless the same be willful or has resulted from inability or indisposition to use it. The forfeiture of a franchise is not to inflict punishment on its owners, but for the protection or for the benefit of the public who are interested in its exercise.

9. **Case Adhered To.**—State v. Railway Company, 24 Texas, 131, which holds that whenever facts are presented which conclusively show that the high public trust involved in the grant has been grossly abused to the public detriment, and that the holder of the franchise has placed himself or is placed in such irretrievable embarrassment as to be certainly unable to progress with the enterprise, then the State has the right to resume the franchise.

APPEAL from Aransas.   Tried below before Hon. H. Clay Pleasants.
The opinion states the case.

*Delmas Givens* and *Stanley Welch,* for appellant.—Misuser of a fran-
chise is such a neglect or disregard of the trust or such a perversion of it
to the private purposes of the trustees as in some manner or in some de-
gree lessens its utility to those for whose benefit it was created or else to
work some public injury.   And where the findings of fact by a trial court
are all in favor of the State and relators in a quo warranto proceeding,
and willful abuse and misuser of a franchise is shown continuing for more
than four years and to the injury of the public, it is virtually a finding of
guilty, and judgment of ouster should be granted.   Const. Texas., art.
12, secs. 3, 4; Rev. Stats., App., Quo Warranto, p. 48, secs. 5, 6; The
People v. Bristol and R. Turnpike Co., 23 Wend., 235, *et seq.;* Canal Co.
v. R. R. Co., 4 Gill & Johns., 107, 121; People v. Hillsdale and Chatam
T. R. Co., 23 Wend., 256; People v. Kingston and M. Turnpike Co., 23
Wend., 193; Thompson v. People, 23 Wend., 537; Susquehanna Boom Co.
v. Dubois, 58 Pa. St., 185; 1 Blacks. Comm., 485; State v. Real Estate
Bank, 5 Ark., 598; London v. Vanacre, 1 Ld. Raym., 498.

*McCampbell & Son,* for appellees. — 1.   When all the conditions pre-
cedent have been complied with according to the act of incorporation,
and the franchise vested, and the granting power, on relation of citizens,
seeks a forfeiture for non-compliance with conditions subsequent, the
courts proceed with extreme caution in proceedings which have for their
object the forfeitures of corporate franchises; and such forfeitures are
not to be allowed only for a plain abuse of power by which they fail to
fulfill the design and purpose of their creation.   Slight departures are
overlooked.   High on Ext. Rem., arts. 646, 651–667; Commonwealth v.
Commercial Bank, 28 Pa. St., 383.

2.   Where a penalty for any omission is fixed by statute creating the
corporation, or by contract with the corporation, the penalty is an ade-
quate punishment.   Morris & Cumings, the contracting party, who in-
vested their individual funds to improve the commerce of Corpus Christi
and the country tributary to the same, with no other source of repay-
ment of their outlay but tolls collected on vessels navigating the canal
so excavated by them, with the provision in said contract that the city
had the right if at any time the said canal is suffered to shoal or fill up
or in any manner or way be obstructed so as to impede or delay or pre-
vent the free navigation of the same, by ordinance to suspend the col-
lection of tolls until such obstruction was removed and the legal depth
and width of the channel restored and maintained, and it appears the
said city did act and suspended the collection of tolls until such obstruc-
tions were removed by the contracting parties, and were being removed

before information filed, and completely before trial was had, in such ·case the penalty ought to be and we think is a full satisfaction and a forfeiture should not be granted.    State v. Real Estate Bank, 5 Ark., 595; Wade on Ret. Laws, sec. 112; see this case on former appeal, 62 Texas, 728; also 65 Texas, 53; Morris & Cumings v. Schooner Leona, 62 Texas, ·35; People v. Bank of Niagara, 6 Cow., 196.

STAYTON, CHIEF JUSTICE.—This cause has twice been before this court, .and its history and leading facts will be found in the former reports of the decisions made.    Morris & Cumings v. State, 62 Texas, 729; Id., 65 Texas, 53.

On the last trial the conclusions of law and fact were as follows:

" 1.    That the respondent, the city of Corpus Christi, under charter from the State of Texas, was authorized to open the ship channel which ·connects the waterways of Corpus Christi Bay with those of Aransas Bay, .and to collect and charge tolls from all vessels passing through said channel, and that the charter required that this channel should have a width ·of one hundred feet and a depth of eight feet, and that this width and depth of channel should be maintained during the continuance of the franchise, and that the said charter will expire in the year 1904.

" 2.    That under a valid and binding contract between the said city and the respondents Morris & Cumings, the said Morris & Cumings ·excavated said channel in the year 1874, and under said contract Morris & Cumings were authorized to collect tolls from vessels navigating said channel and apply the same to the liquidation of the bonds of the city executed to secure the excavation of said channel.    That said channel was made by said respondents in accordance with the terms and conditions of the charter, and that the said Morris & Cumings were collecting tolls under their contract at the time of the institution of this suit, and had continuously collected such tolls from the completion of the channel in May, 1874.    That from 1874 to March, 1881, these collections aggregated about $80,000.    That the contract price for cutting the channel was $500,000.    That between the years 1877 and 1881 there was not a strict compliance on the part of the contractors with the terms of their contract and of the charter granted the city of Corpus Christi. During this period, or at least during a greater portion of it, the depth of water in the channel was about seven and one-half feet, while the ·width of the channel for the distance of half a mile, extending inwardly from each of its entrances, was from ninety-five to eighty feet, and at ·one point the width was less than sixty feet.    That the navigation of the channel from the early part of 1877 or the latter part of 1876 to Sep·tember, 1881, was impeded and retarded to some extent, several ships within that period being grounded and some of them delayed for several ·days in the channel.    That formal complaint was made by one of the

pilots of the Aransas and Corpus Christi bays of the condition of the channel in February, 1881, to the local agent of Morris & Cumings, who immediately notified his principals, whose residence was in New York, and upon receipt of this information they ordered repairs to be made upon the channel, and these were begun in April, 1881; and finished in September of that year.

"That in 1877 the city council of Corpus Christi caused a measurement of the channel to be made, and upon finding that the width and depth thereof were not up to the requirements of their charter the council by ordinance suspended, as they were authorized to do under their contract with Morris & Cumings, the collection of tolls; but notwithstanding this ordinance tolls were demanded by Morris & Cumings from all vessels navigating the channel; that the work made on the channel by Morris & Cumings in 1881 restored both its original width and depth so that ships drawing as much as eight feet passed through it without let or hindrance.

"The conclusions of the court upon the law of the case are that while a franchise may be forfeited for any act or omission of the grantee which is violative of the *terms and conditions of the grant, the power of revocation* should be exercised with caution, and that a forfeiture should never be declared when its only effect would be damage to the grantee and injury to the public.

"And as in the judgment of the court a forfeiture in this case would deprive the respondents, Morris & Cumings, of the only means they have of reimbursing themselves for the large amount of money necessarily expended in the excavation and repairing of the channel, and would leave the city of Corpus Christi powerless to keep open a water way, which is indispensable for her commerce, the judgment of ouster prayed for is refused."

The former decisions establish several propositions.

1. That the franchise which it is the purpose of this action to have declared forfeited under valid legislation vested in the city of Corpus Christi.

2. That the contract between the city and Morris & Cumings, whether originally valid, was validated by the legislation referred to in former decisions.

3. That the franchise which it is the purpose of this proceeding to have forfeited still vests in the city of Corpus Christi, although Morris & Cumings for a specific purpose are entitled to exercise it.

There is nothing in the legislation which conferred on the city of Corpus Christi the power to construct the channel and the right to demand tolls for vessels or freight passing through it that in terms provides for a forfeiture of those rights for a temporary failure after the channel was properly opened to keep it at all times of the depth and width prescribed;

nor is there anything in the contracts through which Morris & Cumings hold which provides for an entire forfeiture of their right in case of their temporary failure to keep the channel in proper condition.

In this state of the case few inquiries arise. Is there anything in the legislation through which the franchise was granted that evidences that it was the intention of the Legislature that a temporary failure to keep the channel in proper condition should not be cause for forfeiture?

The Act of the Legislature approved May 22, 1873, among other things provided concerning "an ordinance passed by the mayor and board of aldermen of the city of Corpus Christi on the 15th day of April, 1858, entitled 'An ordinance supplementary and consolidating all ordinances heretofore passed relative to the opening of the ship channel between Corpus Christi and Aransas Bay,' and an ordinance passed on the 13th day of June, A. D. 1872, relative to the same subject matter and re-enacting said first recited ordinance, and an ordinance passed on the 12th day of February, A. D. 1873, entitled 'An ordinance to re-enact and to validate certain ordinances heretofore adopted in relation to the ship channel,' that the said ordinances are hereby recognized as valid and binding ordinances and contracts between said city and Morris & Cumings who have acted under and availed themselves of their provisions; and the bonds issued under said first recited ordinance are hereby declared valid and binding as a lien upon and to be satisfied out of the tolls and revenues arising from the said ship channel, but not otherwise, any act or resolution of any future city council to the contrary notwithstanding. Compliance with said contract and payment of said tolls may be enforced by any person holding said bonds in the courts of the State having jurisdiction of the amount by any compulsory process known to the law, and all grants, powers, rights, privileges, and franchises, and property of every nature and kind whatsoever heretofore had and possessed or vested in the city of Corpus Christi and not expressly repealed or modified by this act and its provisions, shall continue to vest in and shall remain and enure to said city under this act."

The validity of this and other like legislation was considered on former appeals of this case.

The ordinance of April 15, 1858, among other things, provided "that the said company shall keep the said channel at all times open as they progress in said work, and should the said D. S. Howard & Co. permit said channel to fill up or shoal, or place obstructions in said channel so as to impede navigation, *then in that case the collection of tolls by them shall be suspended until all obstructions shall be removed or said channel deepened to the depth heretofore specified.*"

Morris & Cumings hold through Howard & Co.

There are other ordinances of like effect.

In view of the legislation to which we have referred we are of opinion

that in the consideration of the question before us, in looking for the legislative intention the ordinances of the city council should be given as much effect as would the same provisions incorporated in an act of the Legislature.

When the act of May 22, 1873, was passed it was known to the Legislature that the city did not expect to have the channel opened and maintained otherwise than through Morris & Cumings, whose contract with the city it was one of the purposes of that act to validate in all respects.

It was known that the city had issued its bonds, and that the means which it had reserved to compel Morris & Cumings to keep the channel open was the suspension of their right to demand and receive tolls while the channel was not kept in such condition as not to impede navigation.

Under this state of facts it ought not to be assumed that the Legislature intended that as against the city a cause of forfeiture might exist on account of some fact which the city council expressly, and the Legislature in declaring in all respects valid the ordinances of that board, had in effect declared should only operate to suspend the right of Morris & Cumings—the persons who were by both expected to open and maintain the channel—to collect tolls while interruption to navigation was permitted to continue.

There can be no doubt if a corporation or individual holding a franchise neglects the performance of a duty to the public which forms the consideration for the franchise that this will be sufficient cause for declaring the franchise forfeited, in the absence of something showing a legislative intent to the contrary.

If, however, it appears from the law confirming or recognizing the existence of a franchise that it was intended its holder might resume its exercise after a failure for a time to conduct the business to which the franchise relates in accordance with the purpose for which it was given, then such cessation in the performance even of duty to the public ought not to be held to give cause for forfeiture.

Whether a franchise shall be forfeited depends on the will of the same body that has power to confer it in the first instance; and if by that the harsher remedy is waived and a milder one adopted to compel the performance of the duty undertaken and on account of which the franchise is given, it is not for the courts to declare whether the Legislature acted wisely or unwisely, but it is their duty to give effect to what seems to them the will of the Legislature.

We understand the Legislature to have declared that if Morris & Cumings shall permit the channel to become so obstructed as to impede such navigation as may be in a channel such as they were required to open and maintain, then "the collection of tolls by them *shall be suspended until* all obstructions shall be removed or said channel deepened to the depth heretofore specified."

To suspend a right is not to take it away, but for a time to withhold the lawful power to exercise it.

The declaration that the exercise of a power *"shall be suspended until"* some specified act or acts be done carries with it the implication that the resumption of the exercise of the right was intended and lawful when the state of facts on which the suspension was made is removed and the facts on which the right was formerly lawfully exercised are restored.

Such a declaration ought to be held to operate as a waiver of the right to have a forfeiture of a franchise declared on account of the mere failure for a time to perform the duty on account of which the franchise was originally granted, and so whether the duty be one in which the public are interested or not.

This is illustrated by the case of The People v. The Bank, 6 Connecticut, 215. In that case the law provided if the bank should fail to redeem in specie it should, on pain of forfeiture, discontinue its business and close operations until such time as it should resume specie payment.

A forfeiture was claimed on the ground that the bank had ceased to redeem in specie, and the court said: " It will be seen by this specification that the time for resuming operations is not limited in terms, nor was it intended so to be. I think it manifest the Legislature did not intend that the refusal to pay on demand should be a ground of forfeiture whatever may have been the cause of refusal, but on the contrary they intended that the business of the bank might be again commenced at an indefinite period whenever the defendants should resume the payment of their bills. If this be the true construction, of which I have no doubt, it follows that whether the suspension was six months or six years there was no cause of forfeiture."

To the same effect are the following cases: The People v. Bank of Niagara, 6 Cowen, 209; State v. Bank, 10 Ohio, 538; Commonwealth v. Bruce, 4 Pickering, 464.

There is some conflict of authority whether the mere provision for a penalty for the failure to perform acts incumbent on a corporation or other holder of a franchise will amount to a waiver by the State of its right to have a forfeiture declared because of misfeasance or nonfeasance. The weight of authority sustains the proposition that the fact that provision is made for a recovery of a penalty by those injured by the misuser or nonuser of a franchise does not operate as a waiver of the State to have a forfeiture declared, and this seems to be the better rule; but none of the cases which so hold deny that this right of the State may be waived by legislation which recognizes that the exercise of the franchise may be suspended and again resumed, the right to the benefits from the exercise of the franchise being denied during such suspension.

In the case before us there is nothing in the law conferring the franchise on the city of Corpus Christi or upon Morris & Cumings which de-

clares that the demanding or receiving of tolls by the latter while the channel was not in the condition in which the law required it to be kept should be ground for forfeiting the franchise, and it does not appear that payment of tolls during that time were involuntarily made.

Nor do we understand that the reception of such tolls is made an independent ground for forfeiture, but if it were we do not see that this should be enforced against the city, in whom rests the franchise; for the nonuser of a franchise, to entitle the State to its forfeiture, ought to be willful or to result from inability further to exercise it or indisposition so to do.

It is not true that the forfeitures of such franchises are declared for the purpose of punishment, but they are declared and authorized to be declared when this becomes necessary for the protection or welfare of the public.

The contract between the city and Morris & Cumings the Legislature has declared valid, and thereby they became the agents of the city, a municipal corporation, approved by the Legislature, and we are unable to perceive on what ground the forfeiture of the franchise can be declared when the Legislature provided another method for protecting the public interest deemed by it sufficient, and when the city, the holder of the franchise, has committed no wrong willfully or otherwise.

It appears that Morris & Cumings at great expense opened the channel in accordance with the requirements in 1874, under authority which the city had held for twenty years without exercising it, during which time no complaint was made of its inaction; that the channel was maintained in good condition until the latter part of the year 1876 or first part of the year 1877, and that in 1881 it was again put in good condition, and has since so remained.

From the latter part of 1876 or early part of 1877 the channel was not strictly in the requisite condition, but during that time it was generally used, vessels of the largest size entering the waters constantly passing through it, and during much of that time it is shown that much larger vessels could pass through the channel than could cross the outer bar over which vessels had to pass before reaching the channel.

The bonds issued by the city can be paid only out of tolls received or to be received, and may have gone into the hands of third persons who relied on the legislation to which we have referred as a waiver of the right of the State to forfeit the franchise on account of a temporary failure of Morris & Cumings to keep the channel strictly in the condition required.

The same necessity for the channel now exists which heretofore existed, and it is and was in good condition before the grounds on which the forfeiture is now claimed was made an independent cause for forfeiture.

We concur in the ruling of the court below that the power to revoke

such a franchise as is involved in this case should be exercised with caution, and never except upon the clearest grounds when the effect of such an act will be to injure its holder and the public alike.

There being no statutory cause for forfeiture prescribed, and common law grounds for this alone being relied upon, "reference must be had to the general objects of the enterprise for which the franchise was granted. Whenever facts are presented which conclusively show that the high public trust involved in them have been grossly abused to the public detriment, or that the holder of the franchise has placed himself or is placed in such irretrievable embarrassment as to be certainly unable to progress with the enterprise contemplated by the charter, then the State has a right to resume the franchise." State v. Railway Co., 24 Texas, 131.

Looking to the entire case we are not prepared to hold that such facts are shown as would justify a judgment other than that rendered by the court below, and its judgment will be affirmed.

*Affirmed.*

Delivered March 26, 1889.