ASA L. CHAMBERLAIN AND ANOTHER vs. WILLETT HEM-
INGWAY AND OTHERS.

New Haven & Fairfield Cos., Jan. T., 1893. ANDREWS, C. J., CAR-
PENTER, FENN, PRENTICE and J. M. HALL, Js.

A mere sluice-way or inlet from the sea, through which a current flows in
and out with the tides, is not a water-course, and the owners abutting
on it have no riparian rights.
An owner of land through which such a sluice-way runs has a right to fill
it up and convert it into upland.
A water-course, as defined in the law, means a living stream, with definite
banks and channel, not necessarily running all the time, but fed from
more permanent sources than mere surface water.

[Argued January 20th—decided March 6th, 1893.]

SUIT for an injunction against the filling of a sluice-way
by the defendants; brought to the Superior Court in New
Haven County and heard before *Thayer, J.* Facts found
and judgment rendered for the defendants, and appeal by
the plaintiffs. The case is stated in the opinion.

*H. G. Newton*, for the appellants.
1. For more than fifty years the water-way in question has
existed, twenty feet wide, and over three hundred feet in
length, and in it the water was six feet deep at ordinary high

tide.   It connects at each end with the Quinnipiac river.
Water has passed through it during all this time.   Loaded
boats have passed through it.   The plaintiffs and defendants
have had sewers running into it.   A town sewer flows into
it.   Upon these facts it is a water-course, subject to the usual
law of water-courses.   The main body of water flows in
different directions, but, during substantially all the time, it
is flowing in one direction or the other.  · It is not necessary
that the water should flow in only one direction.   " A river
is a running stream of water pent in on either side by banks,
shores or walls ; and it bears that name as well where the
waters *flow and re-flow with the tide* as where the current is
always in one direction."   Gould on Waters, § 41.   Clearly
it is not necessary that the waters should be always flowing
in order to constitute a water-course..   That ravines through
which the water flows only a part of the time are water-
courses if they show traces of running water flowing fre-
quently, seems to be well established.   *Earl* v. *De Hart*, 12
N. J. Eq., 280 ; *Palmer* v. *Waddell*, 22 Kan., 352; *McClure*
v. *City of Red Wing*, 28 Min., 186 ; *Conniff* v. *City of San
Francisco*, 67 Cal., 45.   The courts of this state fully recog-
nize the common law rule that riparian proprietors have a
right to have the water flow where and as it has been accus-
tomed to flow for fifteen years.   *Ingraham* v. *Hutchinson*, 2
Conn., 590 ; *Jennings* v. *Sherwood*, 8 id., 128 ; *King* v. *Tif-
fany*, 9 id., 166 ; *Tucker* v. *Jewett*, 11 id., 318 ; *Parker* v.
*Griswold*, 17 id., 302 ; *Branch* v. *Doane*, 18 id., 241.

2. Here is a continuously flowing stream.   There is a large
drain through the plaintiffs' premises, carrying sewage and
waste water from eleven stores and tenements.   The town
sewer from Fair Haven Heights runs into it, as well as the
waste water from the defendants' premises..   These are
·enough to constitute a continually running stream.

3. This is an artificial water-course, and the plaintiffs are
therefore all the more entitled to its continuance.   " A water-
·course, though artificial, might have been so long used as to
become a natural water-course, prescriptively. · * * *  When
the owners of different parcels of land conduct water across ·

such parcels in an artificial channel, and do not define their respective interests in the water, they have the same right to its use on their respective lots as between themselves as would exist if the artificial water-course were a natural one." Gould on Waters, § 225. " An uninterrupted adverse use of water for more than twenty years in a particular manner, gives the right to continue to use it in the same manner." *Townsend* v. *McDonald*, 12 N. York, 381.

*H. Stoddard* and *S. A. York, Jr.*, for the appellees.

ANDREWS, C. J. All the questions of law made in this case depend upon a question of fact. In their complaint the plaintiffs say they are the owners of a piece of land adjoining a sluiceway running out of and into Quinnipiac river. In the second count the sluiceway is spoken of as " a river or water-course."

If the sluiceway so spoken of is a "river," or "a water-course," so that the owners adjoining it on either side have riparian rights of the same kind and to the same extent that land owners upon the banks of an inland stream possess them, then the contention of the plaintiffs is correct, and there is error in the judgment of the Superior Court; otherwise there is no error.

From the finding it appears that the Quinnipiac river flows southerly and empties into New Haven harbor. The lower part of the river is a part of that harbor. That part of the city of New Haven which lies on the easterly side of the river at this point is called Fair Haven. On the Fair Haven side the flats spread out originally very wide between the upland and the channel of the river. The highway which has always existed from Fair Haven to New Haven is now known as Grand Avenue. About one hundred years ago a bridge was built across the Quinnipiac river as a part of this highway. In building it a causeway was constructed from the upland on the Fair Haven side over the flats to a point where a pier was placed. About twenty feet westerly from that pier another pier was erected. Over the space between these two

piers a bridge was laid. From the second pier the causeway was continued westerly about one hundred feet further, and constructed solid by filling in earth, where a third pier was built. From the third pier the bridge was carried across upon a series of piers to the westerly side of the river. The space so left between the first and second piers afforded a passage way through which the water passed and re-passed with the tides. At low tide there was no water at that place. At high tide the water was about six feet deep. The plaintiffs' predecessors in title were the owners of the upland on the north side of the highway. The predecessors in title of the defendants owned the upland on the south side of the highway. These, and other owners north and south of the highway, have from time to time reclaimed the flats lying in front of their respective pieces of upland. In doing so they have conformed to the plan of the causeway and bridge ; that is to say, they have each left an open space in the filling, for the water to pass through, at the same place and of the same width as the one left in the causeway. The sluiceway so formed extends north of the highway about two hundred feet, and south of the highway about one hundred and twenty-five feet, is open at both ends to the water of the harbor when the tide runs, and is the " river " or " water-course " described in the complaint, for the obstruction of which the plaintiffs seek to recover damages. The reclaimed land of the plaintiffs as well as that of the defendants, with the opening through it as is above stated, had been in substantially the same condition that it was in for more than fifteen years before this suit was brought.

The plaintiffs asked the court to hold that the sluiceway had become a water-course in which they as riparian proprietors had all the usual rights of riparian proprietors. The court did not so decide. The only reason of appeal which it is necessary to consider is that " the court erred in holding that the premises in question had not become upland and said sluiceway a water-course, and that the plaintiffs were not entitled to the ordinary rights of a riparian owner in such water-course."

All the waters on the face of the earth may be divided into tide waters and inland waters. It is only to the latter that the term water-course can be applied. Water-courses are commonly denominated rivers, rivulets or brooks according to their magnitude. It is only upon water-courses that riparian rights exist. Chancellor WALWORTH, in *Child* v. *Starr*, 4 Hill, 375, said that " a water-course had *ripam* but not *littus*." So conversely it may be said that the tide water has *littora* but not *ripas*. Littoral are very different from riparian rights. A water-course consists of bed, banks and water. Yet the water need not flow continually; there are many water-courses which are sometimes dry. To maintain the right to a water-course it must be made to appear that the water usually flows in a certain direction, and by a regular channel, with banks and sides. Angell on Water-courses, § 4 : Gould on Waters, § 41. " It may be natural, as where it is made by the natural flow of the water caused by the general superficies of the surrounding land from which the water is collected into one channel; or it may be artificial, as in case of a ditch or other artificial means used to divert water from its natural channel, or to carry it from low lands from which it will not flow in consequence of the natural formation of the surface of the surrounding land." *Earl* v. *De Hart*, 12 N. Jer. Ch., 283, 284. A water-course implies a source, a current and a place of discharge. "A river or stream begins at its source, where it comes to the surface." Angell on Water-courses § 46. "A water-course is a stream of water usually flowing in a definite channel, having a bed and sides or banks, and usually discharging itself into some other stream or body of water." *Luther* v. *Winnisimmet Co.*, 9 Cush., 174 ; *Gillett* v. *Johnson*, 30 Conn., 180. "A river is a considerable stream of water that has a current of its own, flowing from a higher level which constitutes its source, to its mouth where it debouches." *The Garden City*, 26 Fed. Rep., 766. "It is the moving of the water from the source to the mouth that makes the water-course." *Challoner* v. *Thomas*, Yelv., 143. " Fons aquæ, aqua currens, et ostium, est aquæ cursus. The word 'river' is derived from the

Latin *rivus*. *Rivus est locus per longitudinem depressus, quo aqua decurrat.*" Ulpian's Dig., *De Rivis*. And it is used constantly by the Latin authors in a sense that implies a current from a source to a mouth." "*Rivorum a fonte deductio.*" Cicero. "*Omnia flumina atque rivos qui ad mare pertinebant.*" Cæsar. *State* v. *Gilmartin*, 9 N. Hamp., 461; *S. C.*, 14 id., 477. "It is a river or water-course from the point where the water comes to the surface and begins to flow in a channel, until it mixes with the sea, arm of the sea, lake or other water. It may sometimes be dry, but in order to be within the above definition it must appear that the water usually flows in a particular direction and has a regular channel with bed, banks or sides." *Dudden* v. *Guardians of Clutton Union*, 1 Hurlst. & Nor., 627; Gould on Waters, 41; *Gallup* v. *Tracy*, 25 Conn., 10, 17; *Stanchfield* v. *City of Newton*, 142 Mass., 110, 116, and note. "A large stream of water flowing in a channel on land towards the ocean, a lake or another river; a stream larger than a rivulet or brook." Webster's Dict., *River*. "A large inland stream of water flowing into the sea, a lake or another river; a stream larger than a brook." Worcester's Dict. "A stream flowing in a channel into another river, into the ocean or into a lake or sea." Stormonth's Dict. "A large stream of water flowing through a certain portion of the earth's surface and discharging itself into the sea, a lake, marsh or another river." Imperial Dict. "A considerable body of water flowing with a perceptible current in a certain definite course or channel, and usually without cessation during the entire year." Century Dict. "A water-course as defined in the law means a living stream with definite banks and channel, not necessarily running all the time, but fed from more permanent sources than mere surface water." *Jeffers* v. *Jeffers*, 107 N. York, 650; *Joliet & Chicago R. R. Co.* v. *Healy*, 94 Ill., 416, 421.

We have cited these numerous authorities for the purpose of showing clearly that the sluiceway in question was not and is not a water-course, as that term is known in the law. If it be granted that the reclaimed land owned by the plaintiffs

may be treated as upland, it does not follow that the sluice-way is a river or any other kind of water-course. At the most it is like an inlet or ravine in the land, into which the water of the harbor runs when the tide rises and out of which the water flows when the tide falls. That it is open at both ends so that the water may run clear through—in one direction when the tide is rising and in the other direction when the tide falls—can make no difference. If by a figurative use of speech this sluice can be said to have banks and a bed, it certainly has no water of its own. The water of the harbor runs into it and runs out again. A man can take as many steps on a treadmill as on a highway, but he cannot perform a journey on it. The treadmill is not a high-way. Water may flow into this sluice and flow out again, but it does not therein pursue a course. There is no stream of water passing through it in the sense of a water-course. There is no current, as the word "current" is applied to a stream of water. It has no source distinguishable from its mouth and it has no mouth distinguishable from its source. It is not a water-course.

In their brief and in their oral argument the plaintiffs made their claim in another form—that the court erred in holding that they, the plaintiffs, had not the right to have the waters ebb and flow in the sluiceway as they had been accustomed to flow. This is only claiming that the ordinary riparian rights which attach to an inland stream of water ought to apply to the water of the sluice. The plaintiffs say that the waters of the harbor have ebbed and flowed through the sluice for more than fifteen years and that thereby they have obtained the right to have the waters continue to so ebb and flow by adverse use. We are not able to see that anything has been done or omitted, by the plaintiffs or by the defend-ants, which was adverse to any right of the other. The plain-tiffs have done nothing which they had not a perfect right to do. They have done nothing to which the defendants could have made any legal objections. The plaintiffs and their grantors were the owners of the upland adjacent to the water. They exercised their unquestioned right to reclaim

the flats in front of their land by filling them up in such manner as they chose as far out as the channel of the harbor or as far as they desired to do. They did not make the filling continuous, but left a space unfilled into which the tide has ever since caused the water to flow. They owned the land next north of the causeway built as an approach to the Grand Avenue bridge. In that causeway there had been left an open space twenty feet wide. The plaintiffs put their unfilled space so that it connected with the open space in the causeway. And they have at all times since made such use of their unfilled space as they desired, at no time doing anything of which the defendants or any other owner could make any legal complaint. The defendants and their grantors owned the upland bordering upon the tide water next south of the causeway. They too exercised their right to reclaim the flats in front of their land by filling them up in such manner as they chose as far out as the channel of the harbor or as far as they desired to do. But they did not make their filling solid and continuous. They left an unfilled space so that it connected on the south with the opening in the causeway, and into which the tides have ever since set the waters of the adjacent river. They have made such use of their open space as they desired, at no time doing anything they had not the most perfect right to do, and at no time doing anything of which the plaintiffs or any other owner could have made legal complaint. So that nothing has been done at any time by either of these parties which was adverse to any right of the other. Let this be tested in another way. Suppose the defendants had never filled in their flats further than the east side of the sluiceway, and that they now proposed to continue the filling further west as far as the harbor line, and to make the filling solid, could the plaintiffs cause them to be enjoined? Obviously not, for the defendants would be doing only that which they had the clear right to do. *Prior* v. *Swartz*, 62 Conn., 132; *Mather* v. *Chapman*, 40 id., 382.

If the plaintiffs could not successfully resist an obstruction to the sluice in the way supposed, it is certain that they

cannot lawfully complain of what the defendants are now doing.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.