CHOUKE v. FILIPAS et al. (No. 9255.)

Court of Civil Appeals of Texas. Galveston. Oct. 25, 1928.

Rehearing Denied Nov. 22, 1928.

Maco Stewart and W. N. Zinn, both of Galveston, for appellant.

Roy Johnson, of Galveston, for appellees.

PLEASANTS, C. J. This appeal is from a judgment of the court below refusing to perpetuate a temporary injunction theretofore granted appellant restraining appellees from operating a barge in Sydnor's bayou in such manner as to destroy the oysters planted and growing on the land of appellant which forms the bed of the bayou.

The suit was instituted by appellees to restrain appellant from maintaining a fence across the bayou which prevented its navigable use by appellees.

In his answer to appellees' suit, appellant admitted the construction of the fence, which he averred was necessary to protect his oyster beds from irreparable injury and destruction by the operation by appellees thereover of a motor-propelled scow or barge, the propeller of which dug up, damaged, and destroyed his oysters. He further averred that he had no desire to interfere with appellees or any one in the navigation of the bayou in a manner not inconsistent with his right to protect his oysters from destruction or damage. By cross-bill he pleaded his title and ownership of the land on which the oysters were planted and growing, and reaverred the damage and injury caused him by the operation of appellees' barge over his oyster beds and appellees' threat and intention to continue to so use the barge in navigating the bayou, and prayed that appellees be perpetually enjoined from so doing.

The case was heard and taken under advisement by the court on June 21, 1928, and, pending a final decision, a temporary injunction was granted appellant restraining appellees from operating the barge in Sydnor's bayou.

In the final judgment, rendered on July 9, 1928, the temporary injunction granted appellant was vacated, and he was perpetually enjoined from maintaining a fence or other obstruction in the bayou which would interfere with its navigation by appellees.

The trial court filed conclusions of fact from which we copy the following:

"1. I find that Sydnor's Bayou, the subject matter of this suit, is an arm of Offatt's Bayou, which, in turn, is a part of Galveston Bay; that Sydnor's Bayou extends from Offatt's Bayou southward into Galveston Island a distance of approximately one mile; that Sydnor's Bayou is affected throughout its entire course by the ebb and flow of the tide in Galveston Bay.

"2. That Sydnor's Bayou throughout its entire course retains an average width of over thirty feet, and has had and retained such width as far back as any witness can remember.

"3. That said Bayou is in fact and in law a navigable stream and has been such as far back as any of the witnesses can remember. Also that it was admitted by the defendants on the trial of this cause that said Bayou is a navigable stream.

"4. That the depth of water in said Bayou is largely controlled by the tide in Galveston Bay; that during extra high tide the water attains a depth of three feet or over; while at extremely low tide there is little or no water therein; that the average mean high tide therein is approximately two feet and the average mean low tide is approximately one foot; that there are two tides daily in Galveston Bay.

"5. That Sydnor's Bayou is crossed by a County wagon bridge about a half or three quarters of a mile from its mouth; that defendant Chris Chouke owns the land on both sides of said Bayou from this bridge to the mouth of said Bayou; that plaintiffs own land on said Bayou on the opposite side of said bridge.

"6. That defendant Chris Chouke also claims to own the bed of said Bayou where it runs through his said land; that this claim is based on the fact that he holds same under deed from Jones and Hall, to whom was patented on November 20, 1840, all of Galveston Island west of what is known as the Menard Grant. The original survey of said grant calling for the line to cross the mouth of Offatt's Bayou (then known as Oyster Bayou), thereby including all of Offatt's Bayou within said grant. Chouke's contention in this regard seems to have been sustained in Baylor v. Tillebach, 20 Tex. Civ. App. 490, 49 S. W. 720.

"7. Defendant Chris Chouke now has, and for

many years has had, valuable oyster beds growing on the bottom of Syndor's Bayou where same runs through his land; these oyster beds extend all the way from said bridge to the mouth of said Bayou; for a distance of about three hundred feet northeast of said bridge, or toward the mouth of said stream, these beds extend the entire width of said Bayou, that is, from bank to bank.

"8. Chouke testified, which testimony was not questioned, that his income from said beds was from two to three thousand dollars annually, and that he valued the beds at twenty thousand dollars.

"9. Plaintiffs have oyster beds growing on the bottom of said Bayou south of said bridge opposite their said land, and have been engaged for the past two years in transporting seed oysters by boat from the open bay up said Bayou to their said oyster beds.

"10. That during the year 1927 plaintiffs had one O'Brien employed to haul seed oysters; that O'Brien hauled the oysters in a flat bottom barge measuring about ten feet wide by twenty-five feet long and drawing about twelve inches of water when loaded to its capacity of from twelve to eighteen barrels of oysters; that O'Brien made about twenty-two trips, two of which the barge was towed by a gasoline launch drawing about two feet, and the other twenty trips the barge was propelled by the means of poles in the hands of the barge crew. It required about forty-five minutes to navigate the barge by poles from the mouth of the bayou to the bridge."

The court further found: That appellees have recently constructed and are now using for the transportation of their oysters on the bayou over appellant's oyster beds a larger self-propelled barge equipped with a Ford engine and a wheel or propeller measuring 12 by 14 inches. That at times the tide in the bayou is such that this barge can be run over appellant's oyster beds without causing any damage to the oysters, but that usually the depth of the water in the bayou is such that the barge frequently drags the bottom, and the wheel stirs up the mud on the bottom of the bayou, and that this "has the effect of damaging and killing the oysters growing on the bottom. That this damage to defendant's oyster beds will result whenever said bayou is navigated by a boat of sufficient draft to drag the bottom or whose wheel is of sufficient size and depth to stir up the mud on the bottom. There is no way, however, that this bayou can be navigated with the power barge described without damaging said oyster beds as aforesaid. In other words, the only method by which said bayou can be navigated without damaging said oyster beds is with a craft of such draft as not to drag the bottom and then to be propelled by shoving with poles."

In an agreed statement and map accompanying the record it is shown that the lines of the subdivision of the Jones and Hall grant owned by appellant cross Sydnor's bayou, and appellant's deed to these subdivisions includes the land under the waters of the bayou.

The refusal of the learned trial judge to perpetuate the temporary injunction protecting appellant's property rights in his oyster beds is based upon the conclusion that, because Sydnor's bayou was more than 30 feet in width, was connected with Galveston Bay, and affected by its tides, it was in fact and law a navigable stream, in which a citizen could obtain no right superior to the right of the public to its navigation. This conclusion ignores the admitted fact that the state, the sovereign owner of the bayou, has granted to appellant and those under whom he holds title to all of the rights of the public in the bayou.

The title of Jones and Hall, and those who hold under them, to the land covered by the navigable waters embraced within the lines of the grant, was confirmed by special act of the Legislature passed in 1854 (Gammel's Laws of Texas, vol. 4, c. 73, p. 125). In addition to this, article 4028 gives to the owner of any bayou included within the bounds of any original grant the exclusive right to use the bayou for planting, growing, and gathering oysters.

The authority of the state of Texas to so dispose of its lands which form the beds of navigable streams or are covered by navigable tide-waters, unless the Congress of the United States has by specific act assumed jurisdiction over such waters, has been uniformly recognized and upheld by the decisions of the Supreme Court of this state and of the United States. We cite the following among the many cases in which this question has been discussed and decided: City of Galveston v. Menard, 23 Tex. 349; Morris v. State, 62 Tex. 728, and Id., 73 Tex. 435, 11 S. W. 392; Baylor v. Tillebach, 20 Tex. Civ. App. 490, 49 S. W. 720; Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Pound v. Turck, 95 U. S. 459, 24 L. Ed. 525; Escanaba v. Chicago, 107 U. S. 678, 2 S. Ct. 185, 27 L. Ed. 442.

The question of the validity of the act of the Legislature giving to the owners of land, the metes and bounds of which as set out in the original grant include any creek, bayou, or lake, the exclusive right to plant and gather oysters therefrom, was passed upon and upheld by this court in the case of North American Dredging Co. et al. v. Walter Jennings et al. (Tex. Civ. App.) 184 S. W. 287.

Appellant's property right in his oysters being inherent in his title to the land on which the oysters were planted and are growing, and being expressly confirmed by the statute above cited, he is entitled to full protection in such right, and we think under the fact finding of the trial court the perpetual injunction asked by him was necessary for such protection.

It follows from these conclusions that the judgment of the trial court should be reversed and judgment here rendered granting the injunction, and it has been so ordered.

Reversed and rendered.