JOE FILIPOS ET AL. v. CHRIS CHOUKE ET AL.

No. 5346.   Decided June 10, 1931.
(40 S. W., 2d Series, 38.)

*Roy Johnson,* for appellant.

It cannot be questioned that at the time of the Jones and Hall grant, and since, the state owned all navigable waters within its boundaries, together with their beds, which had not been appropriated by the national government, and the power to invest private persons with the title and ownership of such lands and· waters, thereby converting same from public navigable waters into private estates.   We insist, however, there is nothing in the facts and history of the Jones and Hall grant indicating an intention on the part of the sovereign power to destroy the public's right of navigation upon Offat's bayou and other navigable streams embraced within the metes and bounds of the Jones and Hall survey, and to ·convert such navigable waters into private estates.   Also that the action of both the state and Jones and Hall and those holding under them from the time of said grant to the present refute the claim of such ,contention.   Landry v. Robinson, 110 Texas, 295; City of Austin v. Hall, 93 Texas, 597.

The true reason for requiring a more certain and specific intention to a grant, in the case of lands covered by tide-water, connected with bays and other navigable streams, then in case of lands not so covered, is believed to be, not any difference in the degree of right, possessed by the sovereign power of the state; but the difference in the character of the property, in its relation to, and connection with, other rights, such as navi-

gation, of fishing, etc., which may be, and usually are, enjoyed in common by all the people of a state; and which are usually kept continually under the protection of the government, directly or indirectly. State v. Delesdenier, 7 Texas, 38; Roberts v. Terrell, 110 S. W., 733; Franklin v. Kesler, 25 Texas, 138; State v. Grubstake Inv. Co., 297 S. W., 205; Rosborough v. Pictor, 34 S. W., 791; Hynes v. Packard, 45 S. W., 562.

We think article 4028, R. S., cited in your honor's opinion, indicates that the Legislature does not regard navigable waters contained within the lines of any survey as private property. It does give to the lawful occupant of any such grant the exclusive right to grow and gather oysters in such waters. If your honor's opinion is correct then there is no need for this statute. We think this statute impliedly declares that all navigable waters contained within the lines of any original grant are to be regarded as navigable waters and the property of the state, and merely gives to the grantee the exclusive right to grow and gather oysters in such waters.

If the exclusive right to grow and gather oysters in such navigable waters can be so exercised as to prevent the otherwise navigability of such waters then the effect of the statute is to declare that such waters can be closed to navigation and appropriated by the grantee to the purposes of a private oyster bed. Surely this was not the purpose and intent of the statute. The rights of the public in common to the use and advantage of the navigable waters of the state is one that has always been most jealously guarded and protected by the government, and while admitting the inherent right of the state to convey such waters to private interests when to do so appears to be for the best interest of the public, still we earnestly contend that no such intention will ever be presumed in the absence of clear and positive language to that effect.

*Stewart, Damiani & Harris, Maco Stewart* and *W. N. Zinn,* all of Galveston, for appellees.

Now, by referring to article 4028, it is seen that whenever any bayou shall be included within the metes and bounds of any original grant or location of land in this state, the lawful occupant of such grant shall have the exclusive right to use said bayou for gathering, planting or sowing oysters. It is thus seen that the state has granted to the owner in fee simple the exclusive right to the use of the bayou. This article 4028 also provides that the riparian owner shall have the exclusive use of the bayou wherever the width of the bayou is 200 yards or less, such right extending to the middle thereof. We thus see that not only did the Legislature of Texas in 1854 grant this bayou to the predecessors in title of Chouke, but the Legislature by the said articles 4026, 4027 and 4028 declares the water in the bayous to be public property, and grants to the fee owner of the bottom thereof the sole and exclusive right to the use and right of such bayou and the waters thereof necessary to growing oysters.

In the case of City of Galveston v. Menard, 23 Texas, 394, the Supreme Court of Texas clearly explains the distinction between the decisions relating to navigable waters in other jurisdictions and those relating to Texas waters.

It is to be borne in mind that the bottom of this bayou is owned by Chouke that the Republic of Texas made a grant thereto, that Chouke is the owner of land on both sides of this bayou, that the Legislature of the State of Texas, in 1854, confirmed the grant of the bottom of this bayou to Hall and Jones, and particularly that there has been no Federal legislation with respect to the subject of navigation; but on the contrary, the State of Texas, by every oyster law it has ever passed, has expressly declared that the owner of land covered by salt water had the exclusive right thereunder.

The Supreme Court of the United States in Hardin v. Jordan, 140 U. S., 371, holds squarely that until Congress passes some specific law with respect to public navigable waters, that the entire right to regulate and control such waters and land under them is exclusively within the jurisdiction of the state. Barney v. Koekuk, 94 U. S., 324, 24 L. Ed., 224; United States v. Beef, Slough, etc., 24 Fed., 1064; Pound v. Turck, 95 U. S., 495; Wilson v. Blackbird, 2 Peters, 245; Gilman v. Philadelphia; Escanaba v. Chicago, 107 U. S., 686, 27 L. Ed., 446; Morris v. State, 62 Texas, 728.

When an individual interferes with right of navigation under authority of the state, the only questions that can arise are: Was the statute lawfully enacted. Is the individual acting within his authority. Is it very clear that Chouke was acting under authority of a grant from the state, an act of the Legislature confirming his ownership of the bottom, and a general statute of the state granting to such owner the exclusive right to grow oysters on the bottom of said bayou and the exclusive right to so much of the water thereof as is reasonably necessary to the growth of oysters. As Chouke was exercising his right, then the only question that can arise is as to whether Garblich and Filipos, under the commerce clause of the Constitution, have a right of navigation superior to the right granted to Chouke by the Legislature of the State of Texas. In Ensworth v. Com., 52 Pa., 320, it is held that a dam erected in a navigable river is not a nuisance when authorized by law, although an obstruction to navigation. It would seem very clear that if anyone should damage such dam he would be liable in damages to the owner of the dam. McBride v. Williamato, 232 Pac., 287; Selman v. Wolfe, 27 Texas, 68; Anderson v. Columbia Con. Co., 184 Pac., 240; United States v. Brazoria County, 2 Fed., 861; McGready v. Virginia, 94 U. S., 291.

MR. COMMISSIONER CRITZ delivered the opinion of the court.

The record in this case discloses the following: Chris Chouke is the owner of certain land on Galveston Island. This title is held by Chouke by mesne conveyances from Jones and Hall, to whom it was originally

patented on November 28, 1840. This patent was validated by act of the Legislature of Texas passed February 8, 1854. Gammel's Laws of Texas, vol. 4, p. 125. The validating act in question reads as follows:

"An Act to confirm the patent issued by the Commissioner of the General Land Office to Levi Jones and Edward Hall, on the twenty-eighth day of November, eighteen hundred and forty.

"Section . . Be it enacted by the Legislature of the State of Texas, That the patent issued by the Commissioner of the General Land Office, on the twenty-eighth day of November, eighteen hundred and forty, to Levi Jones and Edward Hall, for lands on Galveston Island, be, and the same is hereby confirmed, and the State of Texas disclaims any title in and to the lands described in said patent, in favor of the grantees and those claiming under them. ,

"Passed, February 8, 1854."

The original survey lines of the Jones and Hall survey, and also Chouke's field notes, include the land in the bayou where Chouke has the oyster bed involved in this suit. Also the land owned by Chouke lies on both sides of said bayou and the oyster bed is located between the two banks. In other words if the patent is valid to the extent of including therein the part of the bayou covered by its lines Chouke is the owner of the land where his oyster bed is situated. At the time this suit was instituted, and for many years prior thereto, Chouke had growing at the bottom of the bayou at the place above mentioned a valuable oyster bed. This bed was worth about $20,000, and produced an annual income of from $2,000 to $3,000.

Joe Filipos et al. owned land abutting on the same bayou, and owned an oyster bed at the bottom of such bayou opposite their land. The oyster bed of Chouke is located between that of Filipos et al. and the open bay. Filipos et al. had for some time before this controversy arose, been transporting seed oysters from the open bay to their oyster bed by boat, and in doing so they must and did cross the oyster bed of Chouke. It is shown that at first Filipos et al. navigated the waters over Chouke's bed with a boat or oyster barge of shallow draft, propelled by poles, and that this method of navigation did little, if any, damage to Chouke's bed. It seems to have required about forty minutes to navigate the barge with poles from the mouth of the bayou to the bed of Filipos et al.

About 1928 Filipos et al. constructed a large barge. This barge is 11 by 26 feet and draws about a foot of water when loaded. It is self-propelled; being equipped with a gasoline engine and a wheel or propeller measuring 12 or 14 inches. This propelled works in what is called a tunnel so that its lower part is about on a line with the bottom of the barge. This barge thus propelled is capable of making about three and a half or four miles an hour up the bayou when loaded. There are times, due to low tide, that such barge canot navigate the bayou, while

at other times the depth of the water is such •that it can be navigated up the bayou without damaging Chouke's oyster bed. Usually the depth of the water over Chouke's oyster bed is such that this self-propelled barge drags the bottom and the wheel thereof stirs up mud and sediment at the bottom of the bayou. When this barge drags the bottom over Chouke's oyster bed, stirring up the mud and the sediment as above stated, the effect thereof is to greatly damage Chouke's bed, and to kill many of his growing oysters. This damage will always result when the bayou is navigated by a boat of sufficient draft to drag the bottom, or whose wheel is of sufficient size and depth to stir up the mud and sediment. There is no way that the bayou over Chouke's oyster bed can be safely navigated with this power barge without greatly damaging the same. However, the same can be navigated by using a barge or boat of sufficiently shallow draft not to drag the bottom, and which is propelled by shoving the same with poles.

In this state of affairs Chouke fenced the bayou where his oyster bed is located in order to prevent Filipos et al. from injuring and killing his oysters with the motor barge above described. Filipos et al. then filed suit in the district court of Galveston county, Texas, to restrain Chouke from maintaining this fence. Chouke answered and admitted the construction of the fence and pleaded that it was necessary to protect his oyster bed from irreparable injury and destruction by reason of the operation of the motor barge by Filipos et al. in the way and manner above set out. Chouke further pleaded that he had no desire to interfere with Filipos et al., or anyone else in the navigation of the waters of the bayou over his bed, provided such navigation was done in such a manner as not to destroy or damage his oyster bed. Chouke pleaded title to the land under the bayou where his own oyster bed was located, and also pleaded his rights under article 4028, R. C. S. of Texas, 1925. It appears from the record that Chouke removed the fence before the case was tried in the district court.

Chouke also filed a cross bill in which he set up the facts hereinabove set out and prayed for an injunction against Filipos et al. and each of them and their agents, servants, employees and representatives restraining them from navigating the waters over his oyster bed in such a manner as to damage or destroy the same.

Trial in the district court before the court without a jury resulted in a judgment for Filipos et al. In his conclusions of law the trial judge held that the bayou in question was a navigable stream, and that the right of Filipos et al., and the general public to navigate said stream is superior and paramount to Chouke's property right in the oyster bed growing at the bottom thereof, and that Chouke therefore had no right to prevent Filipos et al. from navigating the bayou over his oyster bed with the

power boat or barge, even though such navigation injured or destroyed his property.

On appeal the Court of Civil Appeals at Galveston [10 S. W. (2d) 807] reversed and rendered this judgment, holding that Chouke was the owner of the land at the bottom of the bayou and had the right to prevent navigation thereon by Filipos et al. The Court of Civil Appeals further held if Chouke was not the owner of said land that he had the right to grow oysters at the point where said bed is located under the provisions of article 4028, R. C. S. of Texas, 1925, and should be protected in such rights as against Filipos et al. In other words, the Court of Civil Appeals held that under the provisions of article 4028, supra, Chouke has the right to grow oysters at the point where his oyster bed is located, and that such right is paramount to the right of Filipos to navigate the bayou so as to damage or destroy such oyster bed. The Court of Civil Appeals bases this holding on the further holding that the land at the bottom of the bayou, if not the property of Chouke, is the property of the state, and that the state has the power to grant the rights conferred by article 4028, supra, in the absence of any federal act to the contrary.

We are of the opinion that the holding of the Court of Civil Appeals with reference to Chouke's right under article 4028, supra, is correct, and this being true, it is unnecessary for us to decide whether he holds title to the land where his oyster bed is located.

Article 4028, supra, reads as follows:

"Whenever any creek, bayou, lake or cove shall be included within the metes and bounds of any original grant or location of land in this State, the lawful occupant of such grant or location shall have the exclusive right to use said creek, lake, bayou or cove for gathering, planting or sowing oysters. The Commissioner may require the owner of oysters claimed to be produced on such lands, when such oysters are offered for sale, to make an affidavit that such oysters were produced on such lands. If said creek, bayou, lake or cove is not so included, then the exclusive right of the riparian owner shall, wherever the width of such creek, bayou, lake or cove is two hundred yards or less, extend to the middle thereof, and wherever the width of such waters is more than two hundred yards, extend one hundred yards from shore. The right of the riparian owner for planting oysters along any bay shore in this State shall extend one hundred yards into the bay from high water mark or where the land survey ceases. The riparian owner's right to any natural oyster bed located on such one hundred yard reservation shall not be exclusive."

Under the terms of the above quoted article it is expressly provided that whenever any bayou is included within the metes and bounds of an original grant or location of land in this state the lawful occupant of such grant or location is given the exclusive right to gather, plant and sow

oysters. It is also expressly provided that if such bayou, etc. is not included within such metes and bounds, the exclusive right of the riparian owner, shall, whenever the width of such creek, bayou, lake or cove is 200 yards or less, extend to the middle thereof, and whenever the width of such waters is more than 200 yards, extend 100 yards, from shore. We think this statute is in all respects valid and under the facts of this record operates to protect Chouke in his property rights in the oyster bed in question. We are further of the opinion that so long as this statute remains in force Chouke will be protected thereunder regardless of whether he has title to the submerged land where his oyster bed is located, or not. In other words since Chouke's field notes, and the field notes of the grant under which he holds cover the point where the oyster bed is located, and since he is the abutting property owner on either side, he is protected in his right to grow oysters at the point in question regardless of the question as to whether the original grant and validating act above referred to operate to vest title in him to the submerged land in question. North American Dredging Co. v. Jennings (Texas Civ. App.), 184 S. W., 287; Pound v. Turck, 95 U. S., 459, 24 L. Ed., 525; McGready v. Virginia, 94 U. S., 391, 395, 24 L. Ed., 248; Jones v. Oemler, 110 Ga., 202, 35 S. E., 375; Cain v. Simonson (Sup. Ct. Ala.), 39 So., 571, 3 L. R. A. (N. S.) 203; Huffmire v. City of Brooklyn, 162 N. Y., 584, 57 N. E., 176, 48 L. R. A., 421; Barney v. Keokuk, 94 U. S., 324, 24 L. Ed., 224.

In North American Dredging Co. v. Jennings, supra, the Court of Civil Appeals at Galveston, sustained the statute under consideration here and held that the statute operated to give the exclusive right for gathering, planting or sowing oysters, although the original grant confirmed by the Legislature of Texas did not give such exclusive right.

In Pound v. Turck, supra, the Supreme Court of the United States, speaking through Justice Miller held that a state may, in the absence of legislation on the subject by the Congress of the United States, authorize the erection of a dam across a navigable stream within the state and that unless action has been taken by Congress, such act of the state is not repugnant to the power of the federal government to regulate commerce. In this opinion it is further held that a person who erects a dam under such circumstances is not liable for damages or injuries caused thereby.

In Jones v. Oemler, supra, the Supreme Court of Georgia held that the state as the owner of the beds of all tide waters within its jurisdiction, had power to sell or lease such beds or any portion thereof to any of its citizens upon any terms or conditions which its Legislature saw fit to prescribe.

In Cain v. Simonson, the Supreme Court of Alabama, upheld the right of an owner of an oyster bed to restrain the proprietor of another

bed from running his boats over the first party's bed in such a manner as to injure the same.

In Huffmire v. City of Brooklyn, supra, the Court of Appeals of New York held that the owner of an oyster bed was entitled to recover damages where a city so constructed its sewage that the discharge therefrom injured or destroyed such oyster bed.

The case of McGready v. Virginia, supra, by Justice Waite of the Supreme Court of the United States, so clearly announces the law as applied to this case that we deem it expedient to quote the following from the opinion in the McGready case.

"Following, then, this salutary rule, and looking only to the particular right which is here asserted, we think we may safely hold that the citizens of one State are not invested by this clause of the Constitution with any interest in the common property of the citizens of another State. If Virginia had by law provided for the sale of its once vast public domain, and a division of the proceeds among its own people, no one, we venture to say, would contend that the citizens of other States had a constitutional right to the enjoyment of this privilege of Virginia citizenship. Neither if, instead of selling, the State had appropriated the same property to be used as a common by its people for the purposes of agriculture, could the citizens of other States avail themselves of such a privilege. And the reason is obvious; the right thus granted is not a privilege or immunity of general but of special citizenship. It does not 'belong of right to the citizens of all free governments,' but only to the citizens of Virginia, on account of the peculiar circumstances in which they are placed. They, and they alone, owned the property to be sold or used, and they alone had the power to dispose of it as they saw fit. They owned it not by virtue of citizenship merely, but of citizenship and domicile united; that is to say, by virtue of a citizenship confined to that particular locality.

"The planting of oysters in the soil covered by water owned in common by the people of the State is not different in principle from that of planting of corn upon dry land held in the same way. Both are for the purposes of cultivation and profit; and if the State, in the regulation of its public domain, can grant to its own citizens the exclusive use of dry lands, we see no reason why it may do the same thing in respect to such as are covered by water. And as all concede that a State may grant to one of its citizens the exclusive use of a part of the common property, the conclusion would seem to follow, that it might by appropriate legislation confine the use of the whole to its own people alone.

"Neither do we think this case is at all affected by the clause of the Constitution which confers power on Congress to regulate commerce. Art. 1, section 8. There is here no question of transportation or exchange of commodities, but only of cultivation and production. Commerce has nothing to do with land while producing, but only with the product after it

has become the subject of trade. Virginia, owning land under water adapted to the propagation and improvement of oysters, has seen fit to grant the exclusive use of it for that purpose to the citizens of the State. In this way the people of Virginia may be enabled to produce what the people of the other states cannot; but that is because they own property which the others do not. Their productions do not spring from commerce, but commerce to some extent from them."

In Barney v. Keokuk, supra, it is held:

"It is for the several states themselves to determine this question, and that if they choose to resign to the riparian proprietors rights which properly belong to them in their sovereign capacity, it is not for others to raise objections."

We conclude from the above authorities that the Court of Civil Appeals was correct in reversing the judgment of the trial court and rendering same in favor of Chouke on the ground that he was protected in his oyster bed in question here under the provisions of article 4028.

This being true we think it is absolutely unnecessary to express an opinion as to the validity of Chouke's title to the land where the oyster bed is located. We therefore refrain from expressing any opinion whatever on that question.

It follows from what we have said that the judgment of the Court of Civil Appeals should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.