## UNITED STATES v. 772.4 ACRES OF LAND IN CITY OF GALVESTON, TEX., et al.

### Civil Action No. 193.

District Court, S. D. Texas, Galveston Division.

Oct. 16, 1944.

Brian S. Odem, U. S. Atty., and Scott W. Key, Asst. to U. S. Atty., both of Houston, Tex., for plaintiff.

Wayman & Kleinecke (by Jas. W. Wayman), of Galveston, Tex., for Antonio C. Chuoke, Helen O. Chuoke, W. T. Johnson, A. M. Glardon, and A. C. Becker.

Daniel J. Wilson, of Galveston, Tex., for Charles Garbelich and Joe Filipas.

Grover Sellers, Atty. Gen. of Texas, and W. T. Curry, Asst. Atty. Gen. of Texas, for State of Texas.

KENNERLY, District Judge.

This is a suit by the United States of America to take for public use certain lands on Galveston Island, in Galveston County, in this District and Division, including Tracts 27, 27A, 27B, and 43, alleged to be owned by a group of persons referred to for convenience as Landowners.[1] The land has already been taken by the Government, and the amount of compensation that the Landowners shall receive for such Tracts has either been found or agreed upon, and those matters are not now presented. The matter now presented is a controversy between such Landowners and the State of Texas as to the ownership of such parcels of land as are tidal or submerged lands, and the ownership of the compensation to be paid therefor. Such Landowners claim such lands under patents from the Republic of Texas, dated in 1839 and 1840, more than one hundred years ago. The State is not asking in this proceeding to have such patents vacated or set aside, but is attacking them as wholly void. There are two classes of patents:

(a) Those covering lands *sold at auction* to various persons by the Republic of Texas.

(b) Those covering lands *granted* or *sold* to Jones and Hall by the Republic of Texas.

The facts have in the main been stipulated. I quote from a Stipulation of Facts, filed August 1, 1944:

"(a) On June 12, 1837, the Congress of the Republic of Texas passed an Act, the material portion of which reads as follows:

" 'Be it enacted by the Senate and House of Representatives of the republic of Texas, in Congress assembled, that the Secretary of the treasury be, and he is hereby authorized and required to cause the Island of Galveston except the league and labor sold to M. B. Menard and his associates, and all other Islands within this republic to be surveyed in lots not less than ten nor exceeding forty acres each, and that he cause the same to be sold at auction to the highest bidder, on the second Monday of November next at the state house in the city of Houston, the proceeds of the sale to be paid in specie or the notes of current and specie paying banks, in the following manner, to-wit: one fourth part thereof to be paid down, and the other three-fourth to be in three equal installments of three, six and nine months.'

"In 1837, pursuant to such Act, the Engineering firm of R. C. Trimble and William Lindsey made a survey of the area referred to in the Act. The report of their survey is shown on a map or plat they filed in the General Land Office of the Republic of Texas, a certified copy of which accompanies this stipulation. The said map or plat, as made and filed by Trimble & Lindsey, although never recorded in Galveston County, has been referred to and accepted by the public for more than 100 years in making conveyances and contracts relating to the lands so platted, and has been for more than 100 years used by the County officers in levying and collecting taxes.

"(b) That lots numbered 284 and 289 in Section No. One, as shown upon said Trimble and Lindsey map were sold at such auction and each patented by the Republic of Texas on May 7, 1839, to one Thomas J. Green. The Defendant, Charles Garbelich and Joe Filipas, are now the owners of such title as may have emanated out of the Republic of Texas as to said two lots.

"(c) That Lot No. 269 in Section One of the said Trimble and Lindsey Subdivision was sold at such auction and patented by the Republic of Texas to John Price on the 6th day of November, 1840; that Lots Nos. 288 and 285 in Section One of the said Trimble and Lindsey Subdivision were sold at such auction and patented by the Republic of Texas to Thomas J. Green on the 7th day of May, 1839; that such title as may have emanated out of the Republic of Texas by virtue of the patents mentioned in this paragraph has passed

[1] These are Charles Garbelich, Joe Filipas, Antonio C. Chuoke, Helen O. Chuoke, W. T. Johnson, A. M. Glardon, and A. C. Becker.

to and now belongs to the defendants, Antonio C. Chuoke, Helen O. Chuoke, W. T. Johnson, A. M. Glardon and A. C. Becker.

"(d) That Lots Nos. 270, 272, 256, 255 and 253 are within the land contained in and described in a patent issued November 8, 1940, by the Republic of Texas to Edward Hall and Levi Jones, a copy of which is hereto attached marked Exhibit A and made a part hereof; that such title to these lots as may have emanated out of the Republic of Texas by virtue of the Hall & Jones patent has passed to and now belongs to Defendants Antonio C. Chuoke, Helen O. Chuoke, W. T. Johnson, A. M. Glardon and A. C. Becker.

"(e) That in the year 1851 the Supreme Court of Texas held that the above-mentioned patent issued by the Republic of Texas to Hall and Jones was void (see State of Texas v. Delesdenier, 7 Tex. 76, the opinion in which case is referred to and made a part hereof).

"(f) That on the 8th day of February, 1854, the Legislature of the State of Texas enacted the following law, to-wit:

" 'Section 1. Be it enacted by the Legislature of the State of Texas, That the patent issued by the Commissioner of the General Land office, on the twenty-eighth day of November, eighteen hundred and forty, to Levi Jones and Edward Hall, for lands on Galveston Island, be, and the same is hereby confirmed, and the State of Texas disclaims any title in and to the lands described in said patent, in favor of the grantees and those claiming under them. Passed, February 8, 1854.'

"(g) It is agreed that at the date of the taking by the United States and at the time the above mentioned patents were issued, a substantial amount of the acreage in the above mentioned lots and in the adjacent roadways was submerged by the tide waters of a bay and a bayou tributary to the Gulf of Mexico."

I quote from another Stipulation of Facts, filed September 28, 1944:

"(h) That many persons have deraigned title through the patents issued by the Republic to the lots sold at the Houston Auction in 1837 and through the patent issued by the Republic to Hall and Jones in 1840; that many persons have built their homes upon and established their businesses upon such lands and have made valuable improvements thereon; that the lots so submerged, or partly submerged by tidewaters, have been sold and conveyed many times since the above-mentioned grants from the State and the various owners thereof have been continuously required to render and pay taxes on such lots irrespective of the fact that the same, or parts of same, have been continuously submerged by tidewaters.

"(i) That the said Chuoke and other parties to this proceeding have for many years planted and cultivated oysters in Sydnor's Bayou and at the date of the taking of the land in this condemnation they had oyster beds in said Bayou upon which they had for many years expended large sums of money and a great deal of labor, thereby making said oyster beds very valuable. In the case of Filipos et al. v. Chouke et al. [120 Tex. 508], 40 S.W.2d 38 [39] decided by the Supreme Court of Texas on June 10, 1931, the opinion of the Court referring to the oyster bed owned by Chuoke in Sydnor's Bayou, makes this statement:

" 'This bed was worth about $20,000, and produced an annual income of from two to three thousand dollars.'

"(j) Galveston Island, composed of sand, is about 33 miles long with an average width of about three miles. West of the City limits the elevation varies from sea level to about 8 feet above mesne tide. The average elevation is about 5 feet. All of the land shown on the Trimble & Lindsey survey was submerged and practically all of the structures thereon destroyed during the 1900 and 1915 hurricanes and practically all of it has been submerged during numerous other hurricanes.

"(k) During the interval since the Trimble & Lindsey survey was made some 500 feet, on an average, of the south shore that was originally above the high tide of the Gulf is now within the high tide waters due to hurricanes, and the action of the tides. An illustration is the area described in City of Galveston v. Mann [135 Tex. 319], 143 S.W.2d 1028.

"(l) That the Trimble & Lindsey map since it was made has been used in describing the land on Galveston Island west of the City for all purposes such as assessing taxes, making deeds, etc. This map has all along been accepted and acted on and is now accepted and acted on as a correct survey irrespective of whether titles are deraigned under patents issued pursuant to the Houston auction or through the Hall and Jones patent.

"(m) As shown by the stipulation of facts, heretofore filed, Chuoke, et al., claim the ownership of ten lots in Sec. 1 according to the Trimble and Lindsey survey, viz: Lots Nos. 284, 289, 269, 288, 285, 270, 272, 256, 255 and 253. Each of these lots is 330 feet wide. Titles to five of the lots are deraigned through patents issued pursuant to the auction held at Houston, viz: Lots Nos. 284, 289, 269, 288 and 285, and title to the other five under the patent issued to Hall and Jones. The land involved in this title hearing are those portions of eight of the lots to the extent that they lay under the bed or bottom of Sydnor's Bayou, viz:

"Lot 288 an Auction sale patent
" 285 " " " "
" 269 " " " "
" 284 " " " "
" 289 " " " "
" 270 Hall and Jones patent
" 272 " " " "
" 255 " " " "

"(n) The value of the bed or bottom of Sydnor's Bayou under the lots that cross it, at the time it was taken by the United States, was nominal aside from the oysters thereon and the exclusive right to use it for planting, gathering and sowing oysters that was granted to Chuoke, et al., by Revised Statutes 4028 and upheld by the Supreme Court in Filipos v. Chouke [120 Tex. 508], 40 S.W.2d 38.

"(o) There is attached hereto a photostatic copy of a map made in 1845 by William H. Sandusky which may be considered by the Court for what the same is worth."

There were offered in evidence the patents issued to persons under whom the Landowners claim and a certified copy of a map from the General Land Office of Texas. Various other maps have been filed since the hearing and used and referred to by the parties in briefing.

█ 1. It was the settled law in Texas, at the time of the issuance of the patents under which Landowners claim, that submerged land where the tide ebbs and flows could only be disposed of by, or with, the consent of the Sovereign, the Congress of the Republic of Texas. That is still the law. One of the earliest cases is City of Galveston v. Menard, 23 Tex. 349, 390, and one of the latest cases is State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065. In both cases, many authorities are cited.

█ 2. I take up first the lands *sold at auction.*

Certain Acts of the Congress of the Republic of Texas must be examined. These are the Act of December 10, 1836, Gammel's Laws, Volume 1, page 1136, reserving all lands for government use *"except the President be authorized specially by Congress to sell them,"* the Act of December 9, 1836, Gammel's Laws, Volume 1, page 1130, providing for the *sale* of part of Galveston Island to Michael B. Menard and others, and the Act of June 12, 1837, Gammel's Laws, Volume 1, page 1328, providing for the survey and *auction sale* of that part of Galveston Island not sold to Menard. It is clear that these Acts should be construed together, and that when construed together, they show the consent of the Sovereign (the Congress of the Republic of Texas) to the disposal not only of all the submerged lands covered by the *sale* to Menard, but those sold to purchasers, at such *auction sales.* The case of the City of Galveston v. Menard, supra, so holds as to the land sold to Menard, and I think is controlling as to the lands sold at auction.

An earlier case (State v. Delesdenier, 7 Tex. 76, 103) holds that the Acts of Congress mentioned and others referred to separated Galveston Island from the main body of the public domain, and made it available for *sale* "to meet the exigencies of the government," and I think supports the view expressed in the Menard case, that the sale to Menard was not an ordinary grant, but a *sale,* and supports the view that the *auction sales* were not grants. Also I think supports the view here taken that not only in the sale to Menard, but in the auction sales, the Congress intended and consented that submerged lands should pass by the sales and patents.

I uphold the patents issued on the lands sold at auction.

█ 3. Coming now to the lands covered by the Jones and Hall Patent.

All of Galveston Island was not sold to Menard, nor sold at auction, and Levi Jones and Edward Hall caused certain land scrip or certificates held by them to be located on all or part thereof, and it was patented to them. This patent was held void (State v. Delesdenier, supra), because such Island was not a part of the public domain upon which scrip or certificates could be located, but had, as stated, been set aside to be *sold* to meet the exigencies of the Government, etc. On February 8, 1854, the Legislature of Texas passed the Act quoted in the Stipulation, wherein and whereby it confirmed

the patent to Jones and Hall, and the State disclaimed "any title in and to the lands described in said patent, in favor of the grantees and those claiming under them."

The reasons moving the Legislature to pass this Act are not disclosed by the Record. I gather from the Opinion in State v. Delesdenier, suura, that the land scrip which Jones and Hall had located on the land was issued by the Government to pay her debts and "to meet the exigencies of the government," and I take it the Government received the money for such scrip. If this be true, the Legislature, in passing the Act of 1854, was probably moved by considerations of equity and fair treatment to the owners of such scrip and the patentees. Whatever may have been the reasons for the passage of the Act, I think that the Sovereign (the Legislature of Texas) approved, by such Act, the grant or sale to Jones and Hall of all the land, whether submerged or not, described in the Patent.

I uphold the Jones and Hall Patent also.

 4. The Patents which the State attacks, covering both the lands sold at auction and the Jones and Hall lands, were issued more than one hundred years ago. It is stipulated that for many years the Patentees and those claiming under them have constantly and consistently claimed the lands and rendered for taxation and paid taxes thereon. Many other acts of ownership, including the making of valuable improvements, etc., are shown by the Stipulation, and there have been numerous lawsuits between those claiming under the Patentees and persons (other than the State), in which the validity of such Patents was in issue and in most instances confirmed. Baylor v. Tillebach, 20 Tex.Civ. App. 490, 49 S.W. 720, 722 (which is mentioned in State v. Bradford, supra); North American Dredging Co. v. Jennings, Tex. Civ.App., 184 S.W. 287; Chouke v. Filipas, Tex. Civ. App., 10 S.W.2d 807, and Filipos v. Chouke, 120 Tex. 508, 40 S.W.2d 38. So far as this Record shows, the State has not, during all this time, undertaken to repudiate or cancel such Patents, insofar as the submerged land is concerned. Under these circumstances, I think the Landowners, even against the State, are entitled to the presumptions of regularity which are indulged in favor of a long, consistent and undisputed claim as against a dormant claim. And there is much to be said in favor of the view that the Legislature and the different Departments of the State of Texas have treated such Patents as valid, supporting the rule of Legislative and Departmental Construction upon which Landowners rely.

I do not find it necessary to decide whether the "Small Bill" fully discussed in State v. Bradford, supra, validated such Patents.

Let a Decree be drawn and presented, upholding the title of Landowners to the lands covered by the Patents under which they claim, whether such lands be submerged lands or not, and establishing that such Landowners are entitled to the compensation to be paid by the Government therefor.

