**STATE OF TEXAS v. CHUOKE et al.**

No. 11295.

Circuit Court of Appeals, Fifth Circuit.

March 6, 1946.

Rehearing Denied April 15, 1946.

Grover Sellers, Atty. Gen. of Texas, W. T. Curry, Jack W. Rowland and Wm. J. Fanning, Assts. to Atty. Gen. of Texas, and H. E. Kleinecke, Jr., Jas. W. Wayman, and Daniel J. Wilson, all of Galveston, Tex., and Scott W. Key, Sp. Asst. to U. S. Atty., of Houston, Tex., for appellees.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a judgment of the District Court made in connection with a

condemnation proceeding brought by the United States to acquire certain lands on Galveston Island, Texas, by which judgment the claim of the State of Texas of title to a portion of said land was denied and it was adjudged that the State was not entitled to any part of the funds deposited in the registry of the court as just compensation for the taking, except for taxes. The record here is a certificate prepared under Rule of Civil Procedure 76, 28 U.S.C.A. following section 723c, and it does not contain any of the pleadings. The judgment itself, however, recites that it is rendered on an answer of the appellees claiming title to the lots described in the judgment, "and upon the answer and intervention of the State of Texas claiming title to all of those portions of the said numbered tracts and lots lying within and submerged by the tidewaters of inlets, arms and portions of the Gulf of Mexico." In the opinion filed it is further stated "The land has already been taken by the Government and the amount of compensation that the landowners shall receive for such tracts has either been found or agreed upon," and that the only matter presented for decision is the ownership of the submerged lands.

A motion to dismiss the appeal because the judgment is not final, 28 U.S.C.A. § 225, has been made; and though it is not pressed, it is our duty to see that we have jurisdiction of the appeal in this respect. Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616. While the status of the condemnation proceeding as a whole does not precisely appear, enough appears to assure us of our jurisdiction. We recently held in Dade County v. United States, 5 Cir., 142 F.2d 230, that certain orders in such a condemnation proceeding were not final. The issue there was as to the right of the United States to condemn certain public property, and was between condemnor and condemnee; and the orders were interlocutory in their relation to the whole proceeding. Here the judgment does not affect the United States, or its right to condemn any property, or what shall be paid as compensation. The United States has the property, and the compensation has been fixed and the money is in the registry of the court. The questions remaining are only as to the distribution of the fund. Because the court has the money, it must adjudicate the ownership of it, just as a federal court administering a re-

ceivership has jurisdiction and a duty to adjudicate the controversies of claimants to money or property in the hands of the court by its receiver, irrespective of its jurisdiction over them if presented in original suits. The duty to adjudicate to whom the constitutional just compensation shall be paid, as well as the amount of it, comes from the federal law and there can be no question of federal jurisdiction, but the controversy may be, as here, outside the current of the main case so as to be separately tried. It is true that the Rules of Federal Procedure do not control condemnation cases, except as to appeals, Rule 81(a) (7); so that their provisions for separate trial of distinct claims, resulting in proper separate appeals, Reeves v. Beardall, Ex'r., 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, do not directly apply; but they point the way to a convenient handling of cases like this in the trial court. And this handling is directly justified by the old practice when a court had a fund to distribute. Here it appears that the State of Texas made a pleading described as an "answer and intervention"; and a judgment on an intervention which finally settles the separate claim of the intervenor is usually appealable. The conflicting claims as to these submerged lands, and to the money awarded for them, is also in the nature of an interpleader, in which neither the United States nor the owners of other lands have any interest. There is no practical reason for saying that an appeal from the judgment on this interpleader, finally settling the rights of the parties to it, must await the conclusion of all other controversies which may arise out of the condemnation. We sustain the appeal.

On the merits we are called on to adjudicate a delicate question of Texas law between the State and its own citizens. That question has several times been raised in the Texas courts respecting tidewater lands on Galveston Island, but not with conclusive results. The State was not a party to any such case, and is not bound on any principle of res judicata; and the cases stand here only as authority touching the Texas law. The stipulation of facts on which the present judgment was rendered contains the statement: "The value of the bed or bottom of Sydnor's Bayou under the lots that cross it, at the time it was taken by the United States, was nominal aside from the oysters thereon, and the exclusive right to use it for planting, gathering and

sowing oysters that was granted to Chuoke et al., by Revised Statutes § 4028 was upheld by the Supreme Court in Filipos v. Chouke, 120 Tex. 508, 40 S.W.2d 38." Accordingly the right of appellees to the compensation for the oyster beds taken is not here contested. Only the value of the bed of the bayou is claimed by the State, and it is said to be "nominal". It is not appropriate that we should here attempt to settle the Texas law as to title to such submerged lands. The courts of Texas alone can do that. Our only duty is to say whether the State in this case owns the share of compensation money, said to be nominal, arising from taking these few acres of submerged land. We will therefore not attempt to discuss the matter at length. In the early case of City of Galveston v. Menard, 23 Tex. 349, the principles of law applicable to grants and patents which apparently include tidewater lands were declared much as they are now claimed by the State, and they were restated similarly so recently as State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065. The Menard case involved the survey of Galveston Island and its subdivision into lots and fifty-foot avenues which was made by Trimble and Lindsey in 1837 by special authority of the Legislature of the Republic of Texas, and which, with subsequent legislative acts and the patents issued thereon, has stood ever since as the basis of titles on Galveston Island. The patent for the eastern part of the Island where the City of Galveston was intended to be built, was in that case held to be exceptional as respects the general rules concerning the grant of lands abutting on tidewaters; and it was decided that the Legislature, having the power, did in fact authorize the grant to extend to the channel in Galveston Bay, though much tidewater land was included. The lots here involved· are shown on this same survey as ten acre lots, though if the bayou bottom be excluded the acreage of some of them would be much less. The map does not show Sydnor's Bayou as extending to them at all, and the lines of the lots and the adjacent avenues cross the bayou as if it was not in fact there. These lots are not city lots, but might be called suburban lots, each abutting on an avenue. There is room to argue that the surveyors, and the Legislature, contemplated that the avenues should be open and usable, and that the bayous where not shown on the map might be filled up. The agreed fact is that many such bayous have for years been filled. It is stated in argument that the United States has already filled Sydnor's Bayou on the land in controversy. The further agreed fact is that these bayou bottom lands have hitherto been treated as belonging to the owners of lots which included them. The argument to show a clear legislative intent to embrace the submerged land in the patents here involved is not so cogent as in the case of the city patent in the Menard case, and we cannot say that case rules this in favor of appellees. On the other hand we do not think, as the State contends, that the case of Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728, is controlling. This survey of Galveston Island was not involved there, nor were tidewater lands, and the case went largely on Section 42 of the Act of Dec. 14, 1837, which Act was to govern the newly established Land Office and its grants and patents. That Section, now incorporated in Revised Civil Statutes of 1925, Art. 5302, defines "navigable streams" as the term is used in the Act to be streams of an average width of thirty feet and adds, "they shall not be crossed by the lines of any survey." Tidewaters, while navigable waters, are not streams at all in the usual meaning of the term (27 R.C.L., p. 1061; 60 C.J., p. 138; 67 C.J., p. 675; Chamberlain v. Hemingway, 63 Conn. 1, 27 A. 239, 22 L.R.A. 45, 38 Am. St.Rep. 330), and the statute was not in existence prior to Dec. 14, 1837, and does not seem to us to have anything to do with this survey of Galveston Island specially ordered by the Legislature in June, 1837, and accomplished in 1837, very probably before Dec. 14.

█ In the case of Chuoke v. Filipas, Tex.Civ.App. 10 S.W.2d 807, the very lots now in controversy were involved, and especially the oyster beds on the bayou lands in them. The Court of Civil Appeals held Chuoke owned the bayou lands; and if not, he had a right to have and protect the oyster beds, by virtue of a general statute. The Supreme Court held on writ of error that the latter ground was good, and affirmed the judgment, stating it was unnecessary to express an opinion as to Chuoke's title to the bayou bottom. Long previously, in Baylor v. Tillebach, 20 Tex.Civ. App. 490, 49 S.W. 720, bayou bottoms on Galveston Island were involved, and the Court of Appeals upheld the private title to them. A decision of like import is found in North American Dredging Co. v. Jen-

nings et al., Tex.Civ.App., 184 S.W. 287. For the narrow purposes of this case we are content to follow the conclusion reached by these Courts of Appeal, there being no decision of the Supreme Court otherwise; and the judgment here is

Affirmed.