## UNITED STATES v. CERTAIN TRACTS OF LAND IN BRAZORIA COUNTY TEX., et al.

### Civ. A. No. 360.

United States District Court
S. D. Texas, Galveston Division.
June 21, 1950.

Brian S. Odem, U. S. Atty., and Arthur L. Moller, Sp. Asst. to U. S. Atty., of Houston, Tex., for plaintiff.

Masterson & Pope, Rucks, Enlow & Kee, Davis & Henderson, all of Angleton, Tex.,

Fred Much, Werlein & Werlein, William Knight, all of Houston, Tex., for landowners.

Price Daniel, Atty. Gen. of Texas, and H. D. Pruett, Jr., Asst. Atty. Gen., for the State of Texas.

KENNERLY, Chief Judge.

On May 10, 1945, the United States Government filed a Petition in this Court seeking to take for the public use a perpetual easement to use, maintain, repair, etc. the bed or channel and certain parts of the banks of Oyster Creek in Brazoria and Fort Bend Counties, Texas, in this District and Division, etc.[1] On the same day an Order was entered, placing the Government in possession of the property or rights sought to be taken. On June 6, 1946, a Declaration of Taking was filed, and on June 12, 1946, an Order was entered, placing the title to such property or rights in the Government.

A hearing before Commissioners was held on December 14, 1948, to determine the amount of compensation or damages, if any, to be paid by the Government for such property or rights. Awards have been made by the Commissioners to Thomas W. Masterson, Jr., et al. (called for brevity Landowners), and Landowners have excepted thereto. The State of Texas is not mentioned in such Awards and was awarded no compensation or damages. No exceptions to such Awards have been filed by the State.

On January 4, 1950, the United States filed herein its Petition or Motion setting forth that it is uncertain to whom the compensation, etc. for the property or rights taken should be paid, in that the State of Texas, on the one hand, and Landowners who claim under Grants from the State, on the other hand, are claiming to have been the owners of the property or rights taken when taken. Thereupon, the matter was set down for hearing, and Landowners and the State of Texas notified and hearing held. There is Jurisdiction here under the rule laid down in United States v. 772.4 Acres of Land, D.C., 57 F.Supp 462, 463; State of Texas v. Chuoke, 5 Cir., 154 F.2d 1.

At the hearing, the facts proven or stipulated are substantially as follows:

(a) Landowners claim title to the property or rights taken under original Grants made in 1824 and 1825 by the Government of Mexico to certain persons.[2] Such Landowners have and own whatever right or

1. There have been some minor changes in the wording of the description of the property sought to be taken, but the description in the Government's Original Pleading, filed May 10, 1945, is as follows:

"A perpetual easement and right to use, maintain and repair the bed, banks and channel of that section or part of Oyster Creek in Brazoria County, Texas, passing through and traversing the land hereinafter described, for the purpose of conveying, transporting, flowing and delivering water, without hindrance, interruption, obstruction or interference of any kind or nature; together with the right to keep the said bed, banks and channel of said section or part of Oyster Creek free from silt and mud deposits, debris and/or any and all other obstructions of any kind whatsoever; together with the right to place and dispose of spoil upon the bank and banks of said section or part of Oyster Creek, said land being more particularly described as follows:"

2. There are some differences between the Landowners' list of persons and grants and the State's list of such persons and grants. The Landowners' list is as follows:

"William Pettus, Abstract 714; Francis Bingham, Abstract 43; A. McFarland, Abstract 86; David Talley, Abstract 130; C. S. Gorbett, Abstract 64; E. R. Bradley, Abstract 44; A. Robinson, Abstract 125; J. W. Hall, Abstract 68; Jno. W. Hall, Abstract 67; Stephen F. Austin, Abstract 25; S. Richardson, Abstract 122; Wm. Harris, Abstract 71; Wm. Parker, Abstract 194; Shubal Marsh, Abstract 81 & 82; George Robinson, Abstract 126; Jno. Bradley, Abstract 45; Wm. Roberts, Abstract 124; Cornelius Smith, Abstract 129 and Asa Mitchell, Abstract 96."

The State's list is as follows:

"Williams Pettus, Francis Bingham, Edward R. Bradley, Andrew Robinson, William Parker, Shubal Marsh, George Robinson, John Bradley, William Roberts, Cornelius Smith, Asa Mitchell and those portions of the A. McFarlan, Chester S. Gorbet and William Harris located outside of the boundaries of Darrington and Ramsey Prison Farms."

title that passed to such persons by such Grants.

(b) All such Grants lie within the Stephen F. Austin's First Colony. It is undisputed that such Grants were located, surveyed, and laid out by metes and bounds across and on both sides of and include Oyster Creek. The Land Office Maps show Oyster Creek to be included within such surveys. By their language, such Grants purport to grant and pass to such persons title to everything within their metes and bounds. There is no express reservation of Oyster Creek. Only two of the Grants mention Oyster Creek in their field notes.

(c) Of course, no one now living knows what conditions were at the date of such Grants, but it is reasonably clear and I find that at that date, Oyster Creek was a very substantial perennial stream, with an average width of more than 30 feet, and that it has been continuously so since. Such Creek is not now and has never been navigable in fact.

▮ 1:—Under the weight of authority in Texas, the bed, etc. of Oyster Creek did not pass to the persons named in such Grants. Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728; Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438; Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451; Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; State v. Balli, 144 Tex. 195, 190 S.W.2d 71; State v. Grubstake Investment Association, 117 Tex. 53, 297 S.W. 202. Article 5302, Texas Revised Civil Statutes. 1 Gammel's Laws, 3, 27, 31, 32, 33, 38.

2:—But Landowners say that their title and the title of those under whom they claim to the bed, etc. of Oyster Creek was cured and validated by the "Small Bill" enacted by the Legislature of Texas in 1929. Article 5414a,[3] Vernon's Civil Statutes of

3. Such Article 5414a is as follows:

"Art. 5414a. Validating patents on lands lying across or partly across water courses or navigable streams.

"Section 1. All patents to and awards of lands lying across or partly across water courses or navigable streams and all patents and awards covering or including the beds or abandoned beds of water courses or navigable streams or parts thereof, which patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, are hereby confirmed and validated.

"Sec. 2. The State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the lands, and minerals therein contained, lying across, or partly across watercourses or navigable streams, which lands are included in surveys heretofore made, and to which lands patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, and the State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the beds, and minerals therein contained, or water courses or navigable streams, and also all of the abandoned beds, and minerals therein contained, of water courses or navigable streams, which beds or abandoned beds or parts thereof are included in surveys heretofore made, and to which beds or abandoned beds, or parts thereof, patents or awards have been issued and outstanding for a period of ten years from the date thereof, and have not been cancelled or forfeited; provided that nothing in this Act contained shall impair the rights of the general public and the State in the waters of streams or the rights of riparian and appropriation owners in the waters of such streams, and provided further that with respect to lands sold by the State of Texas expressly reserving title to minerals in the State, such reservation shall not be affected by this Act; nor shall relinquish or quit-claim any number of acres of land in excess of the number of acres of land conveyed to said patentees or awardees in the original patents granted by the State, but the patentees or awardees and their assignees shall have the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such water courses or navigable streams, that they have in the uplands covered by the same patent or award; provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream within this State, as defined by Article 5302, Revised Statutes of 1925.

"Sec. 3. All of the provisions of this Act shall apply equally to all Spanish

Texas. Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728; State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065. This the State disputes.

In the "Small Bill", after validating the title of Patentees and Grantees to beds of streams included in such Patents or Grants, there is this wording (Italics mine):

"provided that nothing in this Act contained * * * *shall relinquish or quitclaim any number of acres of land in excess of the number of acres of land conveyed to said patentees or awardees in the original patents granted by the State*".

The State says that before Landowners can claim the protection of the "Small Bill", they have the burden of showing and must show that none of such Grants were or are excessive in acreage, and that the curing and validating of their titles to the bed, etc. of the Creek would not make them excessive in acreage. Landowners reply that such burden is not upon them, but is upon the State.

As stated, Landowners hold under Grants which are more than 100 years old. Texas Courts recognize the sanctity of Grants and Patents and do not set them aside, wholly or in part, except for grave reasons. The Grants here should not be lightly regarded. If this was a suit by the State to set the Grants aside, or to recover excess therein, the State would have the laboring oar. It would without doubt have to combat all the presumptions of regularity indulged in favor of the long asserted claim and title of Landowners. It would unquestionably have the burden of showing that such surveys were and are excessive. I find nothing in the "Small Bill" which relieves the State of that burden, and I think it has that burden here.

The State, although it disclaims having the burden of proof here, and without waiving its contention, has undertaken to prove that the surveys were and are excessive and has failed. The witness Wisdom, offered by the State, while a man of integrity and high standing, had no personal knowledge of the matters about which he undertook to testify, and his testimony and the maps offered in connection therewith must, therefore, be put aside as of no value and having no probative force.

But how stands the matter if the Landowners, in order to have the protection of the "Small Bill", must show that such Grants were and are not excessive, etc.? The answer is that the Landowners are claiming under Grants that have stood unchallenged for more than 100 years. Neither the Mexican Government, the Republic of Texas, nor the State of Texas, during that period, have in any fashion raised the question of excess in such surveys. On the contrary, such Grants have been for years recognized as regular and valid in the Land Office, they have been placed and kept on the official map of the Land Office, and other lands have been surveyed, located, granted and patented with respect to and in recognition thereof. While there is no direct evidence here that all three Governments have received taxes on such Grants from Landowners and those under whom they claim, it is reasonable to say that they have. While the State would probably not be estopped to assert that there is excess in such Grants by receiving taxes, the fact that taxes were received, along with other matters mentioned, shows long acquiescence by the State in Landowners' claim, and that the Grants were and are not excessive. United States v. 772.4 Acres of Land, D.C., 57 F.Supp. 466; State v. Chuoke, 5 Cir., 154 F.2d 1.

The "Small Bill" was enacted as a validating Act and should be liberally construed, and without doubt it extinguished whatever title the State had in that part of the bed, etc. of Oyster Creek involved herein. I find and conclude that Landowners had title thereto at the time same was taken by the Government.

Let appropriate Decree be drawn and presented.

and Mexican land grants and titles issued by the Spanish or Mexican Governments prior to the Texas Revolution of 1836, which have subsequently been recognized by the Republic of Texas, or by the State of Texas as valid."