**P. L. GARRISON and Texas Water Rights Commission, Appellants,**

v.

**BEXAR–MEDINA–ATASCOSA COUNTIES WATER IMPROVEMENT DISTRICT NO. I, Appellee.**

No. 11404.

Court of Civil Appeals of Texas.

Austin.

June 1, 1966.

Rehearing Denied June 22, 1966.

Elbert Hooper, Jr., Austin; Waggoner Carr, Atty. Gen., Hawthorne Phillips, 1st Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., J. Arthur Sandlin and Roger Tyler, Asst. Attys. Gen., for appellants.

Briscoe & Corley, Devine, Graves, Dougherty, Gee & Hearon, Robert J. Hearon, Jr., Austin, for appellee.

HUGHES, Justice.

Bexar-Medina-Atascosa Counties Water Improvement District No. I sued the Texas Water Commission[1] and P. L. Garrison to cancel a water appropriation permit granted by the Commission to Garrison under the provisions of Art. 7500a, Vernon's Ann. Tex.Civ.St. The suit was in the nature of an appeal under the provisions of Art. 7477, V.T.C.S.

The trial court granted motion of the District for summary judgment, and judgment was rendered cancelling the permit.

While the Commission is a nominal appellant and has filed an excellent informative brief it candidly states that it believes the "Trial Court correctly held the permit void." We will, therefore, dispose of this appeal by considering P. L. Garrison as the actual or real appellant, and he will bear such appellation herein.

Art. 7500a, V.T.C.S., Sections 1 and 2, provide:

"1. Anyone may construct on his own property a dam or reservoir to impound or contain not to exceed two hundred (200) acre feet of water for domestic and livestock purposes without the necessity of securing a permit therefor.

2. The owner of any such dam or reservoir wishing to take water from such dam or reservoir for any beneficial purpose or purposes other than domestic or livestock use who elects to proceed

1. Now the Texas Water Rights Commission.

under this Article shall file with the Board of Water Engineers of the State of Texas or its successor a sworn application for a permit on forms to be furnished by the Board upon request, containing the following information:"

On January 2, 1964, the then Texas Water Commission enacted Rule 245.1 reading:

"245.1 GENERAL: Article 7500a, Revised Civil Statutes of Texas, provides that anyone may construct on his own property a dam or reservoir to impound or contain not to exceed 200 acre-feet of water for domestic and livestock purposes without the necessity of securing a permit (Article 7500a is not applicable to navigable streams.)"

Acting under the presumed authority of Sec. 1 of Art. 7500a, appellant constructed a dam on the west prong of the Medina River, thereby creating a storage reservoir with an impounding capacity of approximately 162 acre feet of water. On October 25, 1963, appellant filed an application with the Commission for authority to divert approximately 57 acre feet of water impounded by such dam for the purpose of irrigating approximately 57 acres of land owned by appellant. This application was granted by the Commission on December 27, 1963.

It is undisputed that appellant owns a tract of land in the John A. Cunningham Survey No. 320, Abstract 75, in Bandera County, Texas, within which are located the areas to be irrigated under the above mentioned application and the storage reservoir from which water for such purpose is to be obtained.

2. See Art. 5414a–1, V.T.C.S.

3. See Acts 1895, 24th Leg., Reg.Sess., Ch. 21, Sec. 10, p. 23, Acts 1917, 35th Leg., Reg.Sess., ch. 88, Sec. 16, p. 215, Acts 1925, 39th Leg., Reg.Sess., ch. 136, Sec. 2, p. 341. There was a hiatus between 1913 and 1917 caused by omission from and the repealing provisions of the Irrigation Act of 1913, 33rd Leg., Reg.Sess.,

It is also undisputed that the west prong of the Medina is a navigable stream within the meaning of Art. 5302, V.T.C.S.

The beds of all navigable streams were, prior to the enactment of the Small Bill, Art. 5414a, V.T.C.S., (1929)[2] discussed below, property of the State. State of Texas v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 7 Texas Law Review, p. 493.

Unless the Small Bill has the effect of transferring or relinquishing the ownership of the State in the beds of navigable streams to patentees and assignees of patents or awards of land lying across or partly across navigable streams so as to make such river beds the "own property" of such patentees and assignees within the meaning of those words as used in Art. 7500a, appellant has not built a dam on and impounded water on his "own property," and the permit in issue is void.

It is our opinion that the Small Bill did not vest such patentees and their assignees with such title as would constitute the beds of navigable streams the "own property" of such patentees and their assignees within the meaning of Art. 7500a.

The right of a landowner to build a dam on his "own property" existed long before the enactment of the Small Bill in 1929.[3]

The historical significance of the privilege of landowners to construct dams on their own property is that it commenced and endured for many years when the privilege did not extend to State owned river beds. If it now extends to such property, it is not the result of any legislative act expressly so providing.

All of the provisions of the Small Act are set out in footnotes.[4]

ch. 171, p. 358. There were also enactments subsequent to 1925.

4. "Art. 5414a. Validating patents on lands lying across or partly across water courses or navigable streams.
   Section 1. All patents to and awards of lands lying across or partly across water courses or navigable streams and all patents and awards covering or in-

This Act was construed in State v. Bradford, supra, and we quote from that opinion:

"In view of the importance of this matter to the state and the whole people, the courts of this state have consistently held that all grants with respect to lands under navigable waters, such as river beds and channels, are strictly construed against the grantee; that, if there is any ambiguity in the act, it will be construed in favor of the state; and, unless the act contains plain and unmistakable language expressly conveying the land under river beds and channels, it will not be construed to include them. In other words, before a statute will be construed to include land under navigable waters, such as river beds and channels, it will have to be expressed in plain and positive language and not in general language.

cluding the beds or abandoned beds of water courses or navigable streams or parts thereof, which patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, are hereby confirmed and validated.

Sec. 2. The State of Texas hereby relinquishes, quitclaims and grants to patentees and awardees and their assignees all of the lands and minerals therein contained, lying across, or partly across watercourses or navigable streams, which lands are included in surveys heretofore made, and to which lands patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, and the State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the beds, and minerals therein contained, or water courses or navigable streams, and minerals therein contained, or water courses or navigable streams, and also all of the abandoned beds, and minerals therein contained, of water courses or navigable streams, which beds or abandoned beds or parts thereof are included in surveys heretofore made, and to which beds or abandoned beds, or parts thereof, patents or awards have been issued and outstanding for a period of ten years from the date thereof, and have not been cancelled or forfeited; provided that nothing in this Act contained

*   *   *   *   *   *

In 1917, section 59a, of article 16, Constitution of Texas, called the Conservation Amendment, was adopted, which in part reads as follows: 'The conservation and development of all of the natural resources of this state, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources

shall impair the rights of the general public and the State in the waters of streams or the rights of riparian and appropriation owners in the waters of such streams, and provided further that with respect to lands sold by the State of Texas expressly reserving title to minerals in the State, such reservation shall not be affected by this Act; nor shall relinquish or quit-claim any number of acres of land in excess of the number of acres of land conveyed to said patentees or awardees in the original patents granted by the State, but the patentees or awardees and their assignees shall have the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such water courses or navigable streams, that they have in the uplands covered by the same patent or award; provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream within this State, as defined by Article 5302, Revised Statutes of 1925.

Sec. 3. All of the provisions of this Act shall apply equally to all Spanish and Mexican land grant and titles issued by the Spanish or Mexican Governments prior to the Texas Revolution of 1836, which have subsequently been recognized by the Republic of Texas, or by the State of Texas as valid. Acts 1929, 41st Leg., p. 298, ch. 138."

of the state are each and all hereby declared public rights and duties; and the legislature shall pass all such laws as may be appropriate thereto.'

\*    \*    \*    \*    \*    \*

Nor does the Small Bill violate section 59a of article 16 of the Constitution. We have already set out the material provisions of section 59a bearing upon this subject, and it specifies certain things as public rights and duties. These rights pertain to the preservation of waters of rivers and streams, for irrigation, riparian, and other uses as described therein. It is quite plain that the Legislature in the enactment of the Small Bill did not intend to grant unto the patentees or awardees and their assignees an absolute title to the land described in their patents or awards under navigable waters. The provisions of the Small Bill recognize all those rights to which the beds of statutory navigable streams or water courses had been theretofore reserved under the public policy and laws of this state. After reciting that the state relinquishes, quitclaims, and grants to the patentees and awardees and their assignees all of the lands and minerals therein contained lying across, or partly across, water courses or navigable streams, etc., subject to certain conditions, the Small Bill preserves these rights in the following language: '\* \* \* Provided that nothing in this Act contained shall impair the rights of the general public and the State in the waters of streams or the rights of riparian and appropriation owners in the waters of such streams, and provided further that with respect to lands sold by the State of Texas expressly reserving title to minerals in the State, such reservation shall not be affected by this Act; nor shall relinquish or quitclaim any number of acres of land in excess of the number of acres of land conveyed to said patentees or awardees in the original patents granted by the State, but the patentees or awardees and their assignees

shall have the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such water courses or navigable streams, that they have in the uplands covered by the same patent or award; provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream within this State, as defined by Article 5302, Revised Statutes of 1925.' Vernon's Ann.Civ.St. art. 5414a, § 2.

The Small Bill does not contravene section 59a of article 16 of the Constitution, for the reason that this act expressly reserves to the state, and the public generally, and excepts from the operation of the act, the natural resources located in the river beds affected and, by implication, the necessary accompanying rights of ingress and egress to those resources, and all other rights necessary to their proper use and development.

\*    \*    \*    \*    \*    \*

*The reservation to the state and the public of the waters of streams would, under well-established rules of construction, carry with the reservation all things necessary to the practicable and substantial use of and enjoyment of the things reserved. It carries with it the power to construct dams or other works upon or across the bed of the river in order that the public might enjoy the rights of irrigation or other use of the waters.* The decisions of this state hold that grants for public purposes will be liberally construed so as to fully effectuate such purpose. It is equally true that reservations for public purposes in a grant will be liberally construed so as to give full effect to such reservation, and that the reservation of a named right will necessarily carry with it any use of the property granted necessary to effectuate the reserved right." (Italics ours.)

It is quite obvious that if the State reserved the right to build dams across navigable streams in the Small Act it did not by such Act grant such right to the beneficiaries of the Act such as appellant.

Appellant has cited several cases to establish his ownership of the bed of the Medina River and hence to sustain the validity of his permit. He quotes the following from the opinion of the Court of Civil Appeals in Strayhorn v. Jones, 289 S.W.2d 321, affirmed, 157 Tex. 136, 300 S.W.2d 623:

"As to all the lands in issue, including the river bed, it is here ruled that the Small Bill, Article 5414a Vernon's Annotated Civil Statutes, clearly vested in the respective owners of the uplands on the Salt Fork of the Brazos River: 'the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such watercourses or navigable streams, that they have in the uplands covered by the same patent or award; * * *.'"

However, the Supreme Court, in affirming this case, held:

"Of course, all titles to the river beds vesting in the individual grantees are subject to 'all those rights to which the beds of statutory navigable streams or water courses had been theretofore reserved under the public policy and laws of this state. * * *.' State v. Bradford, 1932, 121 Tex. 515, 50 S.W.2d 1065, 1076, (15), 1077 (19)."

Also cited is Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728, for the holding that the Small Act gave "title" to the Town to that portion of the bed of Mission River within the bounds of the four leagues granted to the Town. This case was subsequent to the Bradford and prior to Strayhorn. It does not purport to question the character of title passing under the Small Act as defined in Bradford and as confirmed in Strayhorn.

United States v. Certain Tracts of Land, 93 F.Supp. 182, U.S.Dist.Ct., S.D.Texas, Galveston, is cited for the statement that, "The 'Small Bill' was enacted as a validating Act and should be liberally construed, and without doubt it extinguished whatever title the State had in that part of the bed, etc. of Oyster Creek involved herein." This was a condemnation suit in which the State of Texas was a party. It was awarded no damages, and made no complaint of this. All damages were awarded to the private claimants.

The controversy in such case, with the State, was regarding any excess acreage which may have been in the surveys crossing Oyster Creek. The State made no contention that it should be paid for the rights reserved to it under the Bradford construction of the Small Act. We are bound by this construction, and the general statement of the Federal Court in the above case cannot, if it so purports, override such construction. The Court there was not confronted with the problem with which we are wrestling, and we are confident it did not intend to modify the construction of the Small Act by our courts.

We have examined the case of Tyler v. Gonzales, Tex.Civ.App., 189 S.W.2d 519, San Antonio, writ ref., w.o.m., cited by appellant. Full discussion of it is not warranted because the opinion states that it does not clearly appear that San Miguel Creek, across a portion of which the erection of a fence was sought to be enjoined, is navigable, and because it further stated there was no evidence that the fence would interfere with any legal right the public might have in the stream. In affirming denial of the injunction the Court applied the rule that in cases tried to the Court all fact issues having support in the evidence are presumed found to support the judgment.

The importance of this case to the parties and to the public is made evident.

The District serves about 1,500 families who are dependent upon water from Me-

dina Lake for irrigation, for domestic purposes and for their livelihood. The dam forming Medina Lake was completed in about 1913 and it and the many miles of canals and laterals were operated for about 12 years by the Medina Valley Irrigation Company. In 1925 the District was formed and acquired the entire system. Since 1934 families in the District have been paying bond taxes at the rate of $1.65 to $1.92 per acre annually and flat rate charges of $1.00 per acre to $1.75 per acre, in addition to charges for water. The District has paid in full its bonded indebtedness of $2,500,000. Irrigated land is of course more valuable than dry land and much land has been purchased at higher price for irrigated land on the faith of the existing system. Banks in the area have based their loans on these values; school districts have issued bonds on the faith of them; outside lending institutions have extended millions of dollars in credit; farmers have invested in equipment and material which would become virtually valueless if they could not irrigate.

The Court judicially knows the nature of the country upstream from the District and to the west of Medina Lake. This is primarily ranching country. While water is of course needed for domestic and livestock purposes, it has not been an area of irrigated farms. If ranches in this area are to be permitted to construct dams across the Medina River and its tributaries without regulation, then by that process the entire downstream economy is in danger of being substantially injured.

Conversely, it appears through an Amicus Curiae brief filed on behalf of the Southwestern Cattle Raisers' Association that, "If the ruling of the Trial Court is upheld in this case, it could have far-reaching consequences adverse to hundreds of Texas land-owners with interests similar to appellant. * * *" We quote further from that brief:

"As this Honorable Court judicially knows from personal observation, stock ponds, tanks and small lakes dot the countryside throughout the width and breadth of the State. Acting on the premise that a man can do what he wills on his own land so long as it does not damage his neighbor, farmers and ranchers have provided water supplies for themselves, their families, and their livestock confident in the belief that the law accorded them this right and since 1895, bolstered by the legal protection afforded them by Section 1 of Article 7500a, V.A.C.S., and its predecessor statutes.

*    *    *    *    *    *

If the ruling of the Trial Court is upheld, the owners of countless stock ponds, tanks, and small lakes will face perplexing decisions and, in many cases, economic hardship. How can the owners determine whether their dams and reservoirs are located on streams defined as navigable under Article 5302? Will they have to measure the watercourse from its mouth up to ascertain whether it averages less than 30 feet in width at the place of impoundment? If they do and the surveys show the streams to be statutorily navigable, will they have to destroy their dams and reservoirs, even when the stream bed has been privately owned by them?"

All of these questions of hardship resulting from any decision which we make have weighed heavily upon us but it is not our responsibility to resolve them. This must be accomplished through policy making channels of our government. Our sole duty is to declare the law as we find it, and to render judgment accordingly. This we do by affirming the judgment of the trial court, for the reasons herein stated, cancelling the Permit issued to appellant as having been unlawfully issued under the provisions of Art. 7500a, V.T.C.S.

Affirmed.